CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

APR 14 2005

JOHN F. CORCORAN, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA STEPHENS, on behalf of herself and as Executrix for the Estate of WAYNE STEPHENS, husband, Decedent, | ) ) ) ) | CASE NO. 3:04CV00081 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | REPORT AND RECOMMENDATION |
| COUNTY OF ALBEMARLE, CITY OF CHARLOTTESVILLE, and RIVANNA SOLID WASTE AUTHORITY, | ) ) ) ) ) | |
| Defendants, | ) ) | By:   B. WAUGH CRIGLER U.S. MAGISTRATE JUDGE |

This action instituted by Patricia Stephens on her own behalf and on behalf of the Estate of

Wayne Stephens ("Stephens") seeking damages and other relief under 42 U.S.C. § 1983 for alleged

violations of both her and her deceased husband's constitutional rights secured by the First and

Fourteenth Amendments to the United States Constitution is before the undersigned on the

defendants' motions to dismiss for lack of subject matter jurisdiction, for lack of standing, and for

failure to state claims upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(1) and (6).  The

motions have been referred to the undersigned under the authority of 28 U.S.C. § 636(b)(1)(B) to

render a report to the presiding District Judge setting forth appropriate findings, conclusions, and

recommendations for their disposition.  For the reasons that follow, the undersigned will

RECOMMEND that the presiding District Judge enter an order DENYING the motion to dismiss

for lack of subject matter jurisdiction; GRANTING the motion to dismiss for lack of standing with

respect to all counts in the Complaint; alternatively, GRANTING the motion to dismiss for failure

-1-

to state a claim upon which relief may be granted with respect to all counts in the Complaint; and DISMISSING the case with prejudice from the docket of the court.

## FACTUAL BACKGROUND

In 1998, various property owners who were adjacent or near to the Ivy Landfill ("Landfill") in Albemarle County, Virginia ("County") instituted an action in this court against the Rivanna Solid Waste Authority ("RSWA") which operated the Landfill, as well as against the City of Charlottesville, Virginia ("City") and the County seeking damages and both declaratory and injunctive relief asserting various federal and state statutory and common law tort causes of action for alleged environmental, health and safety violations arising out of the operation of the Landfill by the RSWA. *Gertrude Weber v. Rivanna Solid Waste Authority*, 3:98CV00109 (W.D.Va. 1998) (referred to hereafter as the "Landfill Suit").[1] On October 24, 2000, the Hon. James H. Michael, Jr., United States District Judge, entered three orders of dismissal. The first was an Agreed Order of Dismissal of the claims asserted by a number of the citizen-plaintiffs (sometimes referred to as "Settling Plaintiffs"). This Order recited that the Settling Plaintiffs, their counsel and the defendants had "reached a compromise and settlement" which was memorialized by a written Settlement

---

[1] The undersigned hereby takes notice of this court's own record of the Landfill Suit which is in the public domain and RECOMMENDS the presiding court do likewise. Specifically, the property owner plaintiffs asserted claims under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S. C. § 6972, for allegedly operating an open dump; under the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for allegedly discharging pollutants into streams from the Landfill; under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, to recover costs associated with responding to the release of hazardous substances from the Landfill; under Virginia common law to abate an alleged nuisance created by operation of the Landfill and to compensate the plaintiffs for alleged damage to their real property; and under the Virginia Water Control Act, Va. Code §§ 62.1-44.43:14, *et seq.*, to compel the defendants to clean up oil discharged or which threatened to be discharged to state waters and lands from the Landfill. *See Weber v. Rivanna Solid Waste Authority*, 3:98CV00109 (W.D.Va. 1998), Docket # 29, Second Amended Complaint.

-2-

Agreement and Release.[2] Finding "after careful review of the record" the "Settlement Agreement to be appropriate and consistent with the ends of justice," the trial court "approved" the Settlement Agreement and incorporated it by reference into the order of dismissal. It then dismissed all claims asserted by the Settling Plaintiffs and retained jurisdiction to enforce the Settlement Agreement. In addition, the Order dismissed all claims by certain citizen-litigants who were not parties to the Settlement Agreement on the basis that they had moved and no longer had an interest in the case, and it acknowledged that separate settlements were pending with the Weber and Strange plaintiffs.

The second order was an Order of Dismissal disposing of the claims of the plaintiffs, Gertrude and Michael Weber, and the third and final Order of Dismissal dismissed the claims asserted by the plaintiffs, Edwin and Pamela Strange. Both of these dismissals were upon Tolling Agreement(s) with those plaintiff fixing a specified time within which those plaintiffs could reinstitute proceedings. That time has past and no further actions have been instituted.

Stephens has alleged that she and her deceased husband were residents of the area known as Ivy in Albemarle County. Complaint, ¶ 5. Plaintiff also alleges that the Landfill operation violated OSHA standards, some of which allegedly were characterized by OSHA as "'serious.'" Complaint ¶ 10. Plaintiff's husband and decedent, Wayne Stephens, is alleged to have been employed at the Landfill by the RSWA and was engaged in cutting old oil storage tanks for resale of the tank material, which plaintiff alleges to have been a "serious" OSHA violation that was known to the RSWA and one or more neighbors who were parties to the Landfill Suit. Complaint ¶¶ 11-14. Plaintiff alleges that, on April 10, 2003, the decedent was killed as a result of an explosion which occurred while he was engaged in cutting up an old oil storage tank on behalf of RSWA. Complaint

_____

[2]Certain provisions of that Settlement Agreement that Stephens challenges as unconstitutional are set forth in ¶ 9 of her Complaint.

¶ 15. Plaintiff further alleges that the decedent died as a "direct result of an OSHA safety violation that more likely than not would have been discussed . . . exposed and prevented in any free exchange and receipt of safety information" concerning Landfill hazards the deprivation of which violated their First Amendment rights. Complaint ¶ 17.

Plaintiff further alleges that the Settlement Agreement violated her constitutional rights secured by the Due Process Clause of the Fourteenth Amendment in that the provisions of the Settlement Agreement were intended to permit a continuation of harmful practices proximately causing the death of her decedent. Complaint ¶¶ 23-25. Plaintiff further asserts that, as "members of the relevant, affected public," she and her husband had a right to "the free exchange and receipt of safety information . . . as guaranteed by the First Amendment" concerning hazards posed to each of them by the RSWA operation of the Landfill.

The parties do not dispute that Wayne Stephens died as a proximate result the industrial accident and that an award of worker's compensation benefits under the Virginia Worker's Compensation Act has issued on account of his death. VA. CODE ANN. § 65.2-100 *et seq*. *See* Defendants' Motion to Dismiss for Lack of Jurisdiction, Exhibits 1- 4.

**THE COMPLAINT**

***Capacities of the Plaintiff***

As indicated above, plaintiff instituted this action on her own behalf and in a representative capacity on behalf the estate of her husband. Because the capacities in which plaintiff asserts her various causes of action is not entirely clear from her Complaint, the undersigned sought clarification from plaintiff's counsel at the motions hearing. Counsel responded that plaintiff has asserted her claims in Counts I and II in her representative capacity as Executor of the Estate of Wayne Stephens under VA. CODE 8.01-50, but she has asserted the claim in Count III in her

-4-

personal or individual capacity.

*Plaintiff's Claims*

In Count I of the Complaint, which is entitled "**violation of First Amendment proximately causing death**," plaintiff asserts that the defendants violated the decedent's First Amendment rights "when they purchased silence and other gagged those knowledgeable about safety problems" at the Landfill.[3] Complaint ¶ 20. She further claims that this conduct deprived other governmental enforcement agencies of "pertinent information" and stemmed the "free flow of information and discussion that *more likely than not* would have uncovered" safety violations and that the decedent's death resulted "from [an] illegal and unconstitutional deprivation of the First Amendment discussion of public safety and [as a result of] a conspiracy to commit such deprivation, which discussions . . . *more likely than not* would have prevented decedent's death." *Id.* Complaint ¶ 21.[4] Plaintiff demands judgment against the defendants, jointly and severally, for the wrongful death of her husband in the amount of fifteen million dollars together with attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Count II, which is entitled "**due process violation**," is brought in plaintiff's personal or individual capacity. She alleges that defendants' deliberate conduct of entering into the Settlement Agreement with the neighborhood plaintiffs served no legitimate governmental interest, was not

---

[3] The First Amendment is applicable as against the states via the Due Process Clause of the Fourteenth Amendment. *See Bigelow v. Virginia*, 421 U.S. 809, 811 (1975); *Schneider v. State*, 308 U.S. 147, 160 (1939).

[4] Plaintiff alleges the practice of cutting up old oil tanks was a violation of standards set by the Occupational Safety and Health Administration ("OSHA") which would have been exposed as such to the plaintiff or her decedent, as members of the public living nearby the Landfill, had the Settlement Agreement never been executed, thus averting the decedent's death. Complaint ¶¶ 10-16.

-5-

reasonable or justifiable and, instead, was arbitrary, unconstitutional, and intended to permit allegedly harmful practices taking place at the Landfill to continue undetected by the public and government regulatory bodies, such as OSHA. Complaint ¶ 24. Plaintiff describes these acts as "conscience-shocking" and alleges that they proximately caused the decedent's death, thereby depriving him of his life without due process of law. Complaint ¶ 25. Again, plaintiff demands monetary relief together with attorney's fees and costs pursuant to 42 U.S.C. § 1988. Id.

Finally, in Count III, which is entitled "**First Amendment violation of Plaintiff and husband individually,**" plaintiff reprises the substance of Count I but this time in relation to what her counsel described in oral argument as a "pure" First Amendment claim. She alleges that, by stifling the flow of information from the neighborhood plaintiffs to the public, defendants violated her and her husband's First Amendment right to receive information about environmental and health and safety abuses at the Landfill. Complaint ¶ 27. Plaintiff demands monetary damages together with costs and attorney's fees pursuant to 42 U.S.C. § 1988 as well as declaratory and injunctive relief voiding the provisions of the Settlement Agreement which plaintiff finds objectionable. Complaint ¶ 28 and "Relief."

## CONTENTIONS OF THE PARTIES

### Subject Matter Jurisdiction

Defendants first seek dismissal of Counts I and II of the Complaint for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) asserting the exclusivity provision of Virginia's Workers Compensation Act. VA. CODE ANN. § 65.2-307. They argue that the decedent's industrial accident was fully covered under the Virginia Worker's Compensation Act, as attested by the fact that plaintiff is currently receiving benefits under the Act from RSWA on account of the decedent's death arising out of and in the course of his employment, and that VA. CODE ANNOT. § 65.2-307

-6-

excludes all other rights and remedies arising from the accident, including those asserted by plaintiff in her now conceded representative capacity in Counts I and II.

Plaintiff's response is threefold: First, she argues that, under the Supremacy Clause of the United States Constitution, 42 U.S.C. § 1983 preempts Virginia's Workers Compensation Act, VA. CODE ANN. § 65.2-307. *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990). Second, she argues that her claim would not be barred even if not preempted because the wrong sought to be redressed did not arise out of or in the course of the decedent's employment, though she concedes that the injuries leading to the decedent's death, and thus her damages, did result from the industrial accident arising out of and in the course of his employment. Third, plaintiff argues that, even if her claims in Counts I and II are barred with respect to the decedent's employer, RSWA, they would not be barred with respect to the remaining defendants.

### Plaintiff's Lack of Standing

The defendants also have moved to dismiss Counts I through III on the basis that plaintiff lacks standing to assert the claims set forth. Defendants argue that in Counts I and III plaintiff is not asserting her own First Amendment rights, or as a representative, those of her deceased husband but those of the neighborhood plaintiffs. Thus, under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992), defendants contend that plaintiff cannot assert an actual or threatened injury in fact *personal* to her or to her husband, and her First Amendment claims must be dismissed. *See also Burke v. City of Charleston*, 139 F.3d 401 (4th Cir. 1998); *Hearn v. Hudson*, 549 F.Supp. 949 (W.D. Va. 1982). With respect to Count II, defendants argue that the substantive due process deprivation alleged by plaintiff can only be understood as a denial of the plaintiff's First Amendment right to receive information as asserted in Counts I and III. Thus, Count II must fail for the same reason. Finally, the defendants claim that, even if the court finds that plaintiff has a personal stake in the

litigation, Counts I and II must fail because plaintiff has failed to plead sufficient facts that would establish that the alleged violative conduct, namely entering into the Settlement Agreement, was a proximate cause of the decedent's accident and death.

Plaintiff responds that, in Counts I and III, she is not asserting the right of the neighborhood plaintiffs to speak but rather her own right and that of her deceased husband to receive information under the First Amendment and, in Count II, the right of her husband not to be deprived of his life without due process of law. In plaintiff's view, these asserted rights give her a personal stake in the litigation and standing to allege their violation. *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975). *See also Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 753-754 (1976) (holding that potential recipients of protected speech have standing to sue to lift a government ban restricting that speech); *Barnstone v. University of Houston, KUHT-TV*, 514 F.Supp. 670, 679 (S.D. Texas 1980).

### Plaintiff's Failure to State a Claim

The defendants finally seek dismissal of all counts under Rule 12(b)(6) on the ground that each count fails to state a claim upon which relief may be granted. The defendants address Counts I and III together and argue that plaintiff cannot bootstrap a cause of action by relying upon any real or perceived First Amendment rights of the neighborhood plaintiffs. In other words, defendants do not believe plaintiff has or can allege a deprivation in her personal or representative capacities because her entire case is built on speculation. Thus, they contend that plaintiff has not pled, and cannot plead or establish beyond surmise, speculation, and conjecture, any causal link between the alleged deprivation and the decedent's death as alleged in Count I or that the plaintiff has been affected in her individual capacity under Count III. Defendants also argue that COUNT II is nothing more than an ordinary tort claim disguised as substantive due process claim of the sort proscribed by

-8-

the Supreme Court in *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992). Here too, defendants assert the plaintiff's failure to plead a causal connection between the alleged unconstitutional conduct and any harm to the plaintiff in her representative capacity.

Plaintiff has responded to the defendant's challenges to her First Amendment claims by string citing numerous cases which she contends supports the proposition that members of the public have a right to receive information that, apart from governmental interference, would be offered to them. *See Virginia Pharmacy, supra*; *Procunier v. Martinez*, 416 U.S. 396, 408-409 (1974); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969); *Stanley v. Georgia*, 394 U.S. 557, 564 (1960); *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965); *Marsh v. Alabama*, 326 U.S. 501, 505 (1946); *Thomas v. Collins*, 323 U.S. 516, 534 (1945); *Martin v. Struthers*, 319 U.S. 141, 143 (1943); *Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965)(Brennan, J.)(concurring). Plaintiff argues, in a conclusory fashion, that, in purchasing the silence of the neighborhood plaintiffs, defendants violated her First Amendment right, and that of the decedent to receive information the neighborhood plaintiffs uniquely possessed. After being pressed to more specifically articulate her position, she contends that she and her husband had a constitutional right of access to the information possessed by the neighborhood plaintiffs in an uninhibited marketplace of ideas.

At oral argument, plaintiff's counsel interpreted this right to receive as a right of access to the substance of what the Settlement Agreement purportedly "gagged." According to plaintiff's counsel, the Settlement Agreement so implicated public health and safety that the Agreement itself became a public forum for First Amendment purposes. Also at oral argument, counsel for plaintiff contended that, even if the Settlement Agreement was not, in itself, a public forum and the neighborhood plaintiffs ceded or waived their right to speak about health and safety concerns at the Landfill, their decision was coerced and could not have been voluntary because of the monetary

-9-

inducements offered by the defendants in exchanged for their silence. The plaintiff argues that, as a matter of law, there is no qualitative difference between governmental action stifling speech through exercise of its legislative, regulatory or police powers and offering, as a party to pending litigation, a monetary inducement to citizen-litigants to settle pending litigation on terms that include giving up their First Amendment rights to speak. She considers both equally coercive and in her view the First Amendment mandates that state actors take a strict "hands-off "approach with respect to citizens' First Amendment rights to speak about matters touching upon public health and safety irrespective of the context.

As to causation, plaintiff offers that her allegations must be taken as true. In that vein, she points to her Complaint in which she has alleged the likelihood either that an environmental oversight agency, such as OSHA, would have discovered and put an end to the particular hazardous practice prior to the explosion, or that the decedent somehow would have learned about the hazards and refused to engage in this particular activity of his employer, thus averting death.

By the same token, plaintiff does not directly address the defendants' argument that, under *Harker Heights*, Count II is little more than a common tort claim dressed in constitutional clothing. Instead, she relies on *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) for the proposition that the Due Process Clause protects citizens against arbitrary and conscience-shocking actions of government. She directs the court's attention to that part of the *Lewis* standard addressing conscience-shocking behavior and then focuses almost exclusively on the deliberateness of the defendants in entering into the Settlement Agreement and silencing all criticism of RSWA's activities as the gravamen of her Complaint. She contends that this deliberate conduct, if proven, would demonstrate defendants' deliberate indifference to the safety of the Landfill's neighbors and employees, including plaintiff and the decedent. Moreover, plaintiff asserts that deliberateness is

-10-

dependent on the specific circumstances of each case. Offering that what "shocks in one environment may not be so patently egregious in another," she suggests to the court that the details of those circumstances cannot be decided on a motion to dismiss but must be left to discovery. *Id.* at 849. Plaintiff further reasserts that her Complaint clearly alleges that the Settlement Agreement, which she characterizes as impermissibly purchasing the neighborhood plaintiffs silence, proximately caused the decedent's death in the manner described. She believes nothing more needs to be alleged at this stage of the pleadings.

Defendants reply on two fronts. First, they believe that any protected right to receive information under First Amendment requires that a willing speaker be muzzled by a coercive act of government. They offer that since the neighborhood plaintiffs voluntarily entered into a contract with the defendants to end litigation, there is no willing speaker through whom plaintiff, individually or in her representative capacity, possesses a derivative First Amendment right to receive the information she alleges has been impermissibly muzzled. Second, defendants reiterate that plaintiff has failed to set forth, or proffer to the court in oral argument, any non-speculative, legally sufficient causal connection between the Settlement Agreement and harm to the plaintiff either individually or in her representative capacity. In the end, defendants bottom their defense to Counts I and III on the failure of the plaintiff to set forth facts that would bring her claims within the ambit of the First Amendment and their defense to Count II on *Harker Heights,* which bars utilizing §1983 to assert garden variety common law torts. All the while defendants assert, as a matter of law, the absence of any causal nexus between the Settlement Agreement and harm to the plaintiff in her representative or individual capacities that exceeds mere surmise, conjecture or speculation.

**STANDARD OF REVIEW**

In reviewing any motion to dismiss under FED. R. CIV. P. 12(b), a court must construe the

-11-

plaintiff's pleading liberally, taking all facts alleged in the complaint as true and resolving all doubts and drawing all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-244 (4th Cir. 1999). A court is not, however, required to accept any legal conclusions set forth in the complaint. *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). Moreover, on a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the burden of proving subject matter jurisdiction lies with the plaintiff. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Conversely, on a motion to dismiss under Rule 12(b)(6), the burden rests upon the defendant to demonstrate beyond doubt that the plaintiff can prove no set of facts in support of the claim for relief. *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2nd Cir. 1991)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF LAW

The undersigned will address each of the defendants' three separate motion *seriatim*, beginning with the exclusivity of Virginia's Workers Compensation Act, then turning to the question raised about plaintiff's standing and finally addressing the sufficiency of plaintiff's pleadings under Rule 12(b)(6).

### *Subject Matter Jurisdiction: Exclusivity of Workers Compensation*

The question presented by defendants' motion to dismiss Counts I and II for want of subject matter jurisdiction is whether Virginia's Workers Compensation Act ("the Act"), VA. CODE § 65.2-307, provides exclusive remedy for the decedent's death occurring out of and in the course of his employment and bars her from recovering in her representative capacity under 42 U.S.C. § 1983 on her claims set forth in these counts. The short answer is that it does not.

-12-

The Virginia Workers Compensation Act, VA. CODE § 65.2-307 states, in pertinent part:

> "The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law *or otherwise*, on account of such injury, loss of service or death."

(emphasis added). By the same token, 42 U.S.C. § 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

Plaintiff argues that the federal right of action under § 1983 is not barred by the exclusivity provision of the Virginia law because § 1983 preempts state law under the Supremacy Clause of Article VI of the Constitution.[5] No court in this circuit has specifically addressed the issue, and that very well might be because its resolution appears fairly apparent.

The keystone in the preemption analysis is discerning Congress' intent in crafting the applicable federal statute. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983). Generally, "where the terms of a statute are unambiguous, judicial inquiry is complete." *Adams Fruit Co., Inc. v. Barrett,* 494 U.S. 638, 643 (1990). *See also Rubin v. United States*, 449 U.S. 424, 430 (1981). On the other hand, where the text of a statute is silent or vague, "[p]reemption is compelled [when] Congress' command is . . . implicitly contained in its structure and purpose." *Adams Fruit Co.*, 494 U.S. at 643 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). Section 1983 was enacted prior to the

---

[5] The Supremacy Clause reads: "This Constitution, and the Laws of the United States which shall be maid in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. ART. VI, Sec. 2.

-13-

inception of state workers compensation laws. Therefore whether Congress intended its federal remedial scheme to have preemptive effect over state remedial schemes covering the same territory must be discerned from its underlying purpose. In the undersigned's view, the question is easily answered.

As part of the Civil Rights Act of 1871, § 1983 was enacted under the authority of § 5 of the Fourteenth Amendment to grant to all America's citizens protection against state infringement of the rights, privileges, and immunities secured by the United States Constitution and federal laws. *Monroe v. Pape*, 365 U.S. 167 (1961). *See also Gomez v. Toledo*, 446 U.S. 635, 638-639 (1980) (quoting *Owen v. City of Independence*, 445 U.S. 622, 636 (1980)); *Robertson v. Wegmann*, 436 U.S. 584, 591 (1978); *Miller v. Reddin*, 293 F.Supp. 216, 233 (D.C. Cal. 1968); *Luker v. Nelson*, 341 F.Supp. 111, 120 (N.D. Ill. 1972). The Reconstruction Congress intended the private right of action now contained in § 1983 to operate as a federal enforcement mechanism for constitutional and federal rights because state law remedies either did not exist or functionally were inadequate, particularly in the former Confederacy. *Monroe*, 365 U.S. at 173-174 (comments of Senators Sloss, Sherman, and Arthur during congressional debates). The federal forum for redress of constitutional grievances provided disenfranchised persons a judicial safe harbor from the neglect, suppression, and abuse of justice common in the Reconstruction South.

Notwithstanding the southern focus of the debates, however, Congress did not limit the availability of the federal remedy solely to circumstances where no plausibly adequate state remedy could be found. As the Supreme Court recognized in construing the reach of § 1983, "[t]he federal remedy is supplementary to the state remedy, and the latter need not first be sought and refused before the federal one is revoked." Id. at 183. Thus, no exhaustion of state remedies was required and, in the case of *Monroe*, the federal remedy remained available even though the Illinois

-14-

constitution proscribed unreasonable searches and seizures and likely would have provided the plaintiff the benefit of honest justice.

Notwithstanding the fact that the Virginia Worker's Compensation Act provides reasonable remedies for industrial accidents causing injury and death, and notwithstanding the clarity of its exclusivity provision, it is the undersigned's view that § 1983 preserves a right of action for any person who has suffered a redressable deprivation under color of state authority. Otherwise, states could sidestep federal constitutional and statutory protections whenever their legislatures decided to offer some form of protection under a state statutory framework. While that protection is both permissible and commendable, it cannot serve to exclude those protections afforded under § 1983.

Accordingly, the undersigned RECOMMENDS that the presiding court DENY the defendants' motion to dismiss for lack of subject matter jurisdiction premised on the exclusivity of workers compensation.

### Plaintiff's Lack of Standing

Defendants also seek dismissal of all counts in the Complaint for lack of standing, under the three-part standard set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). According to *Lujan*, a plaintiff has standing under Article II of the Constitution when he or she can assert (a) an actual or imminent, particularized and concrete injury to a personal, legally protected interest, (b) facts reasonably supporting a causal connection between that injury and the challenged action of the defendant, and (c) the likelihood that the injury will be redressed by a judgment in his or her favor. *Id.* at 560-561. In shorthand, a plaintiff must assert an "injury in fact, causation, and redressability." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 167, 168 (2000). Defendants challenge plaintiff's standing with respect to injury in fact and causation.

-15-

<u>Claims Personal to the Plaintiff</u>

As to Counts I and III, plaintiff's First Amendment claims, defendants contend that plaintiff is improperly relying upon the assertion of the First Amendment rights of the neighborhood plaintiffs and not her own rights, thus depriving her of a "personal stake in the litigation." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). More specifically, defendants assert that the only speech rights conceivably impacted by the alleged negotiation of the Settlement Agreement were those of the neighborhood plaintiffs who consented, for a monetary fee, to cease their agitations against RWSA practices, not those of plaintiff and her husband who lacked any connection to the Agreement. Thus, in defendants' view, plaintiff lacks standing to bring her First Amendment claims.

In Counts I and III, plaintiff asserts that defendants, by entering into the Settlement Agreement, violated her right to receive information about the Landfill from the neighborhood plaintiffs that, but for the Agreement, the neighborhood plaintiffs would have disseminated to the public, which included her and her husband. Though the undersigned recognizes that plaintiff is alleging a right to receive information that is personal to her and to the decedent whose interests plaintiff also represents, that recognition does not end the inquiry. Unlike the right to speak, which arises directly from the text of the Constitution, the right to receive is *derivative* of the right to speak. Its protection, therefore, is *contingent*. This special status of the right to receive has direct implications on the court's inquiry about standing. Whereas a speaker always has standing to assert his/her right to speak which allegedly has been abridged, a recipient has standing only where a willing speaker's right to speak has been infringed by coercive state action. Said another way, a recipient has no protected interest in the receipt of information, and thus no standing to sue, unless a willing speaker's protected interest in disseminating that information has been violated by coercive governmental action.

-16-

This principle is best illustrated in *Virginia Pharmacy v. Virginia Consumer Council*, 425 U.S. 748, 753-754 (1976), a case cited by plaintiff. There, consumers of prescription drugs challenged, on First Amendment grounds, a Virginia statute that rendered it unethical for licensed pharmacists to advertise prescription drug price information. As the consumer plaintiffs were not themselves speakers possessing restricted information, but rather potential *recipients* of that information, the Supreme Court first was called upon to address standing. In clear terms, the Court stated: "Freedom of speech presupposes a willing speaker. But where a speaker exists, *as is the case here*, the protection afforded is to the communication, to its source and to its recipients both." *Virginia Pharmacy*, 425 U.S. 748, 756 (emphasis added). The Court then cited a host of earlier decisions in which the right to receive had been recognized, yet never without a prerequisite violation of a willing speaker's right to speak. *See Lamont v. Postmaster General, supra* (holding unconstitutional a federal statute requiring the postal service to detain and destroy mail determined to be communist propaganda except when such mail is requested by the addressee); *Procunier v. Martinez, supra* (holding unconstitutional prison censorship of inmates' outgoing mail); *Red Lion Broadcasting Co. v. FCC, supra* (upholding FCC "fairness doctrine" requiring a radio station to provide air time for a response to a previously aired personal attack); *Marsh v. Alabama, supra* (writing in dicta that "the preservation of a free society is so far dependent upon the right of each individual citizen to receive such literature as he himself might desire that a municipality could not, without jeopardizing that vital individual freedom, prohibit door to door distribution of literature"); *Stanley v. Georgia, supra* (striking down a criminal conviction for possession of obscene literature in part upon First Amendment right to receive grounds); *Thomas v. Collins, supra* (holding that a labor organizer's right to speak and the rights of labor union members to hear what he had to say were violated by a state law requiring organizers to register before soliciting union membership); *Martin v.*

-17-

*Struthers, supra* (striking down a local ordinance forbidding door to door distribution of literature on right to speak and right to receive grounds).

Applying *Virginia Pharmacy* to the present case, it is clear to the undersigned that plaintiff, in either of her capacities, does not have, nor could she possess, standing to assert a derivative right to receive the information uniquely possessed by the Landfill citizen-litigants unless it could be said the defendants, by entering into the Settlement Agreement, acted to *coerce* those litigants, thus, violating their First Amendment right to speak. That is exactly what plaintiff's counsel posited when she explained at oral argument her allegation that the defendants "gagged" the neighborhood plaintiffs by way of the Settlement Agreement. See Complaint ¶ 20.

In her brief filed in response to the motions, plaintiff takes the position that, as a matter of law, any financial or other inducement offered by the governmental or political subdivision in exchange for citizen silence fundamentally is *indistinguishable* from regulatory interference with those citizens' speech rights. At oral argument, plaintiff argued that the First Amendment categorically prohibits a governmental entity from applying *any* pressure, whether regulatory, financial, or otherwise, to influence a citizen's decision to speak or not to speak. She, therefore, has offered that any settlement of pending litigation between a political subdivision of the state and its citizens which involves the exchange of economic benefits for, among other things, a waiver of any citizen-litigant's right to speak out on any issue constitutes such prohibited coercive pressure and violates the First Amendment. Therefore, she believes she has standing to assert derivative claims premised on a right to receive information about which those citizen-litigants had a right to speak. The undersigned disagrees.

Plaintiff has not cited any authority which holds or even hints that a political subdivision acts coercively when, as a party to litigation instituted against it by citizen-litigants represented by

-18-

counsel, it offers a settlement providing, *inter alia*, quantifiable benefits to those citizen-litigants in exchange for, among other things, their right further to oppose or speak out concerning the governmental action which forms the basis for the litigation. Likewise, the undersigned's research has not discovered any such authority, and for a good reason: There is none. Seen this way, plaintiff is inviting this court to plow new ground and to determine an issue of first impression in a manner which extends far beyond the boundaries of any extant decisional authority to hold, as a matter of law, that a governmental entity acts coercively whenever it seeks a waiver of citizen-plaintiffs' First Amendment rights in exchange for benefits accruing to those litigants by virtue of a settlement. The undersigned declines such an invitation and RECOMMENDS that the presiding court do likewise.[6]

In addition, neither plaintiff's Complaint, nor the circumstances which may reasonably be inferred from what is alleged in the Complaint, nor the facts gleaned from this court's own public record in the Landfill Suit compel a different conclusion. To the extent that plaintiff's standing rests on the allegations set forth in her Complaint, she fails to set forth a single fact from which it may be determined that the citizen-litigants were coerced in any fashion that would vitiate their waiver of a constitutional right. The Weber and Strange dismissals stood on their own footing separate and apart from that involving the group of plaintiffs denominated as "Settling Plaintiffs" in the Settlement Agreement. In the October 24, 2000 Agreed Order of Dismissal, which was endorsed by counsel for those settling citizen-litigants and counsel for the government-defendants, the presiding District Judge noted (a) that the neighborhood plaintiffs had informed the court they had reached a

---

[6] At this juncture it is worth noting that, although the undersigned's coercion analysis is firmly anchored in the First Amendment context and directly concerns only Counts I and III, many of the same points can be made in the Fourteenth Amendment context to demonstrate, for purposes of Count II, that the defendants' collective act of entering into the Settlement Agreement was not arbitrary, capricious, or conscience-shocking.

Case 3:04-cv-00081-NKM-JGW   Document 24   Filed 04/14/05   Page 19 of 33   Pageid#: 113

compromise and settlement in the matter and had memorialized it in a Settlement Agreement, and (b) that he, the presiding Judge, had reviewed the Settlement Agreement and approved it as appropriate and consistent with the ends of justice. *See Gertrude Weber v. Rivanna Solid Waste Authority*, 3:98CV00109, Docket # 64-66, Order of Dismissal, October 24, 2000. Furthermore, the Order "approved" and "incorporated by reference . . . as if set forth [herein] in full" the Settlement Agreement which was executed before a Notary Public by all the settling citizen-litigants. The Settlement Agreement was filed along with the Oder of Dismissal and made part of the public record in the case which remains open for inspection to this very day.

The **"RECITALS"** section of the agreement stated the parties "agree that the [Landfill Suit] should be settled," and they expressed a "wish to avoid the expense and uncertainty associated with continued litigation and to resolve *conclusively* all claims and disputes... ." Settlement Agreement and Release at 3. For those reasons, and in "consideration of the mutual promises and covenants contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged," the parties set forth the terms and conditions of their agreement, including the one challenged in this action. *Id*. In addition, the agreement contained a clause which the signatories denominated as the "**PARTIES' ACKNOWLEDGEMENT,**" in which they confirmed the *contractual nature* of the agreement and, more specifically, that it was "a product of arms-length negotiations, that they have been represented by counsel throughout the negotiations leading up to this Agreement... ." *Id* at 37.[7]

It is noteworthy that plaintiff does not set forth a single allegation in her Complaint

---

[7]When a party recites part of a document in support of the allegations set forth in a complaint, the court may review the complete document, here a combination of a document and a court order, to determine whether to grant or deny a motion to dismiss under Rule 12.

challenging the agreement as coercive. That, incidently, would be tantamount to permitting a non-party to the agreement to impact, even vitiate, the rights of all those who were parties. Instead, she sets forth conclusory allegations that the First Amendment rights of plaintiff and her husband were violated when the defendant "purchased the silence of the settling citizen-litigants, and in Count II (Due Process claim), she concludes that such conduct was unreasonable, arbitrary, unjustified by any legitimate governmental interest, and unconstitutional. The entire notion of coercion, therefore, has surfaced in an effort for plaintiff to demonstrate a right personal to her, namely a right to receive the information she claims was silenced, which was abridged by defendants and she may vindicate in this proceeding.

The point here is that, apart from her conclusory statement that the Settlement Agreement was coerced as a matter of law in violation of the First Amendment because a government entity should never be allowed to include a term like the one challenged here in any settlement of civil claims against it, plaintiff fails to set forth a single fact in her Complaint which would allow a reasonable inference to be drawn that the citizen-litigants were coerced into waiving their right to speak. She has not alleged that any citizen-litigant in the Landfill Suit possesses any grounds for challenging the factual validity of the agreement as a whole or the waiver, in particular, and her counsel did not make any good faith representations that such evidence would or could be adduced. Moreover, plaintiff could not allege that the waiver was involuntarily imposed by statute, ordinance, regulation, policy or executive order because this courts own records preclude such assertion. In fact, this court's own records disclose that the parties to the Agreement and Release acknowledged its *arms-length contractual* nature which, by any accepted definition of those terms, would neither be coercive nor coerced.

Instead, plaintiff sets forth in her Complaint bold, and even bald, conclusions about the

-21-

unconstitutionality of the defendants' alleged conduct in negotiating the Settlement Agreement without any factual basis to support them. By this, she gives the appearance of having a right to receive when, in fact, she is unable to plead facts from which it could be inferred that there is a willing speaker through whom plaintiff might derive a right to receive.

That leads to another observation about plaintiff's assertion of standing in this case which focuses more on the integrity of court's disposition of the Landfill litigation than anything else. It does not require a stretch of the procedural imagination to see that, distilled, plaintiff's Complaint is nothing more than a collateral attack on the validity of the findings, conclusions and ultimate disposition of the Landfill Suit by the presiding District Judge in which he entered an order adopting the Settlement Agreement and Release as part of the dismissal order in the case. The Agreement, itself, provided a mechanism for instituting further proceedings relating to its enforcement, and this action is not contemplated by that mechanism.

Plaintiff does not allege that she has acquired any interests of the citizen-litigants or that she represents their interests. She alleges only that she represents her own interests and those of her husband's estate as the result of his alleged wrongful death. If she had acquired any of those interests, or had she been duly appointed a representative of any of the citizen-litigants in the Landfill Suit to pursue any rights they have pertaining to the Agreement, she would be relegated to proceed in a manner consistent with the mechanism set forth in the agreement and adopted by the court in the final Order of Dismissal.

The point of all this is that plaintiff is a stranger to the Landfill Suit, its proceedings and the benefits of its resolution. She is what the law would call an "interloper" in matters pertaining to the agreement reached by the parties in that action, and she is attempting to assert claims here which she

-22-

simply does not possess.[8]

In sum, under *Virginia Pharmacy*, a potential recipient of information has standing to assert a right to receive only where a willing speaker has previously been silenced. Plaintiff has not alleged that the pertinent speakers here, i.e. the citizen-litigants in the Landfall Suit, were "silenced" or "gagged" by virtue of any statute, ordinance, regulation, or policy. By the same token, her conclusory allegations that the citizen-litigants waived their rights to speak because of impermissible coercion cannot be established, as a matter of law, and is tantamount to a collateral attack on the judgment entered in the Landfill Suit. Thus, the undersigned concludes that plaintiff does not have standing, either in her own capacity (Count III) or as administratrix of the decedent's estate (Count I), to assert a right to receive information protected by the Settlement Agreement. The undersigned RECOMMENDS that these claims be DISMISSED.

---

[8] It bears mention that, at oral argument, plaintiff attempted to bolster her right to receive argument by citing *Barnstone v. v. University of Houston, KUHT-TV*, 514 F.Supp. 670 (S.D. Texas 1980) as viable and persuasive precedent despite the fact that *Barnstone* was overruled by the Fifth Circuit Court of Appeals. *See Barnstone v. University of Houston, KUHT-TV*, 660 F.2d 137 (5th Cir. October 30, 1981), *rehearing en banc granted*, 662 F.2d 1110 (5th Cir. Nov. 16, 1981), *consolidated with Muir v. Alabama Educational Television Commission*, 656 F.2d 1012 (5th Cir. Sep. 21, 1981), *affirmed* 688 F.2d 1033 (5th Cir. Oct. 15, 1982). In *Barnstone*, the district court enjoined a public television station to broadcast a controversial program on the ground that public television is a public forum and the station's decision was an unconstitutional, content-discriminatory prior restraint. As the Fifth Circuit Court of Appeals recognized in reversing the *Barnstone* holding: "A facility is a public forum only if it is designed to provide a general public right of access to its use, or if such public access has historically existed and is not incompatible with the facility's primary activity." *Muir*, 688 F.2d at 1042. *See also Richmond Newspapers, Inc. v. Commonwealth of Virginia*, 448 U.S. 555, 589 (1980)(Brennan, J. concurring); *Globe Newspaper Company v. Superior Court for the County of Norfolk*, 457 U.S. 596, 603-606 (1982). Plaintiff's search for some ground upon which to claim standing apparently led to her assert at oral argument that the Settlement Agreement is a public forum for First Amendment purposes. Certainly settlement agreements are a far cry from the kind of "facility" to which there has been historical access. Historically they are negotiated and drafted as private contracts settling matters between the parties to litigation, and they are not designed for general public access.

Case 3:04-cv-00081-NKM-JGW   Document 24   Filed 04/14/05   Page 23 of 33   Pageid#: 117

Standing Causation

Turning to the causation prong of standing test under *Lujan,* defendants contend with respect to Counts I and II that, "even when read in the light most favorable to the Plaintiff, the Complaint fails to establish that the Settlement [Agreement] stifled any information which would have actually become known by her husband and prevented him from engaging in the Practice that directly caused his death." Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Standing at 4. Plaintiff has responded that "had the Defendants not silenced information on hazards and safety and shut down discourse generally concerning problems with the Landfill in the years prior to the [decedent's] death, more likely than not the subject of this hazardous practice would have been part of the free exchange of information resulting in an earlier discovery by OSHA or others so as to have ended this practice and prevented the death." Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss at 13.[9]

Defendants' pleadings seem to blend notions of causation for standing purposes under Article III and those related to proximate causation under substantive §1983 authority. Distilled, their motion assumes for the sake of argument that the Settlement Agreement had the effect of stifling the flow of information from the citizen-litigants to the listening public but challenges the sufficiency of the Complaint on the grounds that it does not demonstrate: a) what information might have been stifled; b) whether the citizen-litigants likely would have spoken on subjects relevant to the activities in which the decedent was engaged when killed; c) whether plaintiff or her husband would have

---

[9] It should be noted that the sole basis for the undersigned's recommendation to dismiss Count III, plaintiff's individual First Amendment claim, is that she fails to assert a legally protected interest (i.e. a right to receive). Should the presiding court disagree, then plaintiff has pled a traceable connection between the defendants' alleged conduct and interference with her then-acknowledged right to receive.

Case 3:04-cv-00081-NKM-JGW   Document 24   Filed 04/14/05   Page 24 of 33   Pageid#: 118

heard whatever the citizen-litigant said in time to avert the fatal event; and d) whether the decedent, even possessing the neighborhood plaintiffs' information, would have acted contrary to RSWA policy, presumably imperiling his job, and would have refused to cut open the old oil tanks. While pled, it cannot be known whether OSHA would have learned of defendants' alleged workplace violations and acted to enjoin them in time to avert the decedent's accident. In sum, it is defendants' contention that plaintiff's claims in Counts I and II, those relating to the decedent's death are founded upon only hindsight which amounts, as a matter of law, to speculation surmise and conjecture. The undersigned agrees.

As the Supreme Court has recognized, the "case and controversy" provision of Article III requires that "a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 42 (1976); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The standard of fair traceability turns on whether, and how many, speculative inferences must be drawn in order to connect the plaintiff's alleged injury, here the decedent's death, to the challenged action of a defendant. *Simon*, 426 U.S. at 45; *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996)("The greater number of uncertain links in a causal chain, the less likely it is that the entire chain will hold true."). By the same token, traceability for standing purposes under Article III may not require as strong a showing as proximate causation. *Smith v. Block*, 784 F.2d 993, 995 (9th Cir. 1986). Yet, when an asserted causal connection is substantially attenuated, standing should not be conferred. *Id. See also Clinton v. City of New York*, 524 U.S. 417, 434 fn. 23 (1998); .

If all a plaintiff need do is to plead a claim in a vacuum, that is, in a manner disconnected

-25-

from the factual context of the circumstances purportedly underlying the claim, the instant plaintiff's

conclusory allegations would appear plausible to the casual observer. While the undersigned wishes

to dispel any notion that a heightened pleading standard is applicable here, it is nevertheless true that

a well-pleaded complaint must provide a factual context from which the plaintiff's legal conclusions

in the form of claims for relief can be gleaned. *See e.g. Simon v. Eastern Kentucky Welfare Rights

Organization*, 426 U.S. 26 (1976)(holding that it was "purely speculative" whether a hospital's denial

of non-emergency service to indigent patients could be traced to an IRS Revenue Ruling granting the

hospital tax-exempt status in spite of the hospital's policy to grant indigents only emergency room

care); *Allen v. Wright*, 468 U.S. 737 (1984)(holding that the parents of black public school students

did not have standing to sue the IRS on the theory that the agency's inadequate enforcement of its

own regulations, which required discriminatory private schools to be denied tax-exempt status,

encouraged white parents to send their children to all-white private schools and thus denied plaintiff's

children the right to attend desegregated public schools). Of course, the court's own public records

provide considerable context.

Looking at it another way and assuming, just for the moment, that the Settlement Agreement

never was negotiated, the plaintiff invites the court to infer five hypothetical facts essential to a causal

chain under Count I and Count II: (1) that the neighborhood plaintiffs/citizen-litigants would have

continued their campaign against RWSA; (2) that those plaintiffs possessed knowledge of and

intended to publicize information about the practice of cutting and reselling oil storage tanks that led

to the decedent's death; (3) that either the instant plaintiff or her decedent would have learned not

only about the subject of the citizen-litigants' complaints against the RWSA which formed the basis

of their action and opposition to the Landfill but also about workplace practices and their attendant

dangers; (4) that either plaintiff or her decedent would have received such information *prior* to the

fatal accident ; and (5) that the decedent, having learned of the risks involved in the practice, would have refused to perform his job which involved cutting oil storage tanks, thereby averting the injuries he eventually sustained. In addition, the plaintiff would have this court infer that the citizen-litigants' campaign would have reached OSHA or another similar regulatory body, and that such regulatory body would have acted to curtail the practice prior to the accident which led to the decedent's death.

Apart from the first inference, namely that the neighborhood plaintiffs would have continued their opposition to the Landfill, the remaining inferences amount to speculation.[10] In other words, pleading what "might have," "could have," "should have," or "would have" been amounts to pure speculation in the absence of facts that would allow a reader of the Complaint reasonably to draw those inferences when reading it in a light most favorable to the plaintiff. This is particularly so where the Second Amended Complaint filed in the Landfill Suit focused exclusively on environmental and health and safety matters as they pertain citizen-litigants' *property*, all the while alleging nothing in relation to workplace conditions at the RSWA facility. *See Gertrude Weber v. Rivanna Solid Waste Authority*, 3:98CV00109, Docket # 29, Second Amended Complaint. In the end, the undersigned is of the view that Stephen's Complaint in this action has not fairly traced her husband's death to the Settlement Agreement for purposes of satisfying the causal connection prong of the standing test under *Lujan*. Accordingly, Count I and Count II should be dismissed on this ground. *See also Frank Kasner Enterprises, Ltd. v. Montgomery County, Maryland*, 410 F.3d 230 (4th Cir. 2005).

Standing Summary

_____

[10] In paragraph 14 of the Complaint, plaintiff asserts that the "practice was known to one or more of the closest neighbors to the Landfill for at least as long as six months prior to April 10, 2003," the day decedent was killed. Plaintiff does not allege that the practice was known to the neighbors involved in the Settlement Agreement (i.e. the neighborhood plaintiffs).

-27-

For the foregoing reasons, the undersigned RECOMMENDS that the presiding court GRANT defendants' motion to dismiss all counts of the Complaint for lack of standing..

### Failure to State a Claim

In addition to contending that plaintiff lacks standing to bring all three counts of her Complaint, the defendants argue that none of the counts set forth in plaintiff's Complaint states a claim upon which relief may be granted. Defendants' primary ground for this assertion parallels the position they took on standing, namely that plaintiff's First Amendment claims, asserted both in her individual and representative capacities, fail for want of a willing speaker and, thus, for lack of a right to receive. In addition, defendants contend that Counts I and II should be dismissed because the Complaint fails to establish a causal connection between the alleged wrongful government conduct and the decedent's death. Suffice it to say that if, as the undersigned has concluded, the plaintiff does not possess a First Amendment claim in either her individual or representative capacity, she certainly cannot state one under Rule 12(b)(6). Moreover, if the Complaint fails to articulate a causal connection between the alleged wrongful conduct and the death of the plaintiff's decedent when measured by the traceability standard under Article III, which is not as strong or strict a standard as proximate causation, then certainly the Complaint cannot measure up to the more strict requirements of causation under substantive §1983 authority.[11]

One matter left to address under Rule 12(b)(6), for completeness sake, relates to Count II,

---

[11]In order to recover under the § 1983 claim set forth in Count III, plaintiff must plead and prove that the alleged conduct of the defendants subjected or caused plaintiff to be subjected" to a violation of her constitutional rights which was "the effective cause of... [her] constitutional injury." *Sales v. Grant*, 158 F. 3d 768, 776 (4th Cir. 1998). The undersigned acknowledges that, if plaintiff has standing to assert her individual First Amendment claim set forth in COUNT III which by her proffer at oral argument is disconnected altogether from her husband's death, then the focus shifts from proximate cause, *per se*, to whether defendant's alleged unconstitutional conduct played a substantial, effective part in causing harm to plaintiff.

-28-

plaintiff's claim in her representative capacity that the defendants' conduct violated her husband's right to substantive Due Process, thereby causing his death. Of course, the presiding court will reach Rule 12(b)(6) consideration of this claim only if it were to dismiss Counts I and III for failure to assert a legally protected interest under the First Amendment (whether as a matter of standing or under Rule 12(b)(6)) but then decline to adopt the undersigned's recommendation to dismiss Count II on causation grounds.

As plaintiff points out, the Supreme Court observed in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998): "The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in the denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." 523 U.S. at 845-846 (internal quotations omitted). Therefore, when governmental action, here executive action on the part of state political subdivisions, is challenged on substantive due process grounds, "only the most egregious official conduct can be said to be 'arbitrary in a constitutional sense.'" *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). "[T]he cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* Certainly, that means the Due Process Clause was not meant to supplant traditional tort law "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849. In other words, substantive due process will be implicated only where "state action [is] so arbitrary and irrational, so unjustified by any circumstances or government interest" as to lay unprotected except by vindication under § 1983. *Cf. Tri-County Paving, Incorporated v. Ashe County*, 281 F.3d 430,440 (4th Cir. 2002)(Wilkinson, J.)

Setting aside the entire question of causation for a moment, it is the undersigned's view that, for plaintiff to state a claim upon which relief can be granted in her representative capacity under

Case 3:04-cv-00081-NKM-JGW   Document 24   Filed 04/14/05   Page 29 of 33   Pageid#: 123

Count II of the Complaint, there must be some showing that the contractual obligations undertaken by the citizen-litigants amounted to government requirements imposed by the defendants which were unreasonable, arbitrary and capricious in that they were unsupported by any legitimate governmental objectives. The undersigned says this because, in paragraph 9 of her Complaint, plaintiff claims that the defendants required that the citizen-litigants, as a condition of the Settlement Agreement, "cease opposition to the landfill," to remove from the public domain, including any personal websites and billboards, "any language or images . . . which deal with the matters raised in [the settled lawsuit] or with respect to the Ivy landfill," to "refrain from directly or indirectly opposing the landfill or permitting," to refrain from making any further "private or public adverse comments about the landfill," and to refrain from engaging or soliciting from others "any opposition to or legal action opposed to said landfill or its permitting process." It is these requirements which plaintiff alleges in paragraph 24 of the Complaint "were not reasonable or justifiable by any legitimate governmental interest but instead were arbitrary, illegitimate, and unconstitutional, and were intended to allow harm and harmful practices to be or remain undetected even from preventative governmental regulatory bodies." Finally, in paragraph 25 of the Complaint, plaintiff claims that "these conscience-shocking acts [by defendants] proximately caused Plaintiff's decedent's death."[12]

---

[12]*County of Sacramento* also articulates the principle that where a particular Amendment to the Constitution provides "an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." 523 U.S. 833, 842 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)(plurality opinion), in turn quoting *Graham v. Connor*, 490 U.S. 389, 395 (1989). Remembering that the gravamen of plaintiff's complaint that plaintiff's death resulted from governmental conduct allegedly abridging the First Amendment, she seems to bootstrap those operative allegations into her claim asserted in paragraphs 23-25 of the Complaint. The court need not determine whether the specific (First Amendment) controls the general (Fourteenth Amendment), or whether plaintiff needs to make an election, for, as it will be explained, it is the undersigned's view she cannot state a claim under either the specific or the general.

Case 3:04-cv-00081-NKM-JGW   Document 24   Filed 04/14/05   Page 30 of 33   Pageid#: 124

Bypassing questions of standing, causation, and the deliberateness with which the defendants acted in pursuing a settlement of the Landfill suit on terms acceptable to both sides, the legal question posed by the defendants' motion to dismiss under Rule 12(b)(6) is whether plaintiff could establish that their conduct did not have a legitimate governmental basis, and thus was unreasonable, arbitrary and capricious in violation of the decedent's substantive due process. The short answer, in the undersigned's judgment, is that she cannot.

The undersigned cannot think of a greater legitimate interest that a government would have than to reach a settlement with citizen-litigants in complex, protracted and expensive litigation involving multiple parties and numerous counsel under terms that not only were acceptable to the litigants and their attorneys, but also were acceptable to the presiding United States District Judge. After all, the plaintiff has not, and likely cannot, set forth any allegation that the **RECITALS** and the **"PARTIES' ACKNOWLEDGMENT"** are not true or that the defendants participated in committing a fraud on the court in order to secure approval of the Settlement Agreement and Release. Moreover, none of this was done in secret, as the entire Agreement was and remains in the public domain, as is the court's Order approving the settlement. Rather than arbitrary, capricious, unreasonable or conscience-shocking, the undersigned believes, as a matter of law, that such conduct was so far within the limits of legitimate governmental conduct that plaintiff allegations to the contrary appear legally frivolous.

Moreover, the Settlement Agreement and Release was so focused on the particulars of the plaintiffs's claims and the impact the settlement would have on the protection of the property rights asserted by the citizen-litigants in connection to the defendants' operation of the Landfill, that it stretches the undersigned's credulity to imagine, much less reasonably believe, that such agreement was entered into with some notion that work-place safety was being compromised. In other words,

Case 3:04-cv-00081-NKM-JGW   Document 24   Filed 04/14/05   Page 31 of 33   Pageid#: 125

the circumstances known to the court from its own records demonstrate beyond peradventure that decedent's safety was not even on the collective mental horizon of the parties to the Landfill litigation.[13]

Should the presiding court reach the merits of Count II, the undersigned RECOMMENDS that the presiding District Judge GRANT the defendants' motion to dismiss it for failure to state a claim upon which relief may be granted.

**SUMMARY**

For the reasons set forth above, the undersigned hereby RECOMMENDS that the presiding court enter an order DENYING defendants' motion to dismiss for lack of subject matter jurisdiction based upon an award of workers compensation; GRANTING defendants' motion to dismiss all Counts of the Complaint for lack of standing; and, alternatively, GRANTING defendants' Rule 12(b)(6) motion to dismiss with respect to all counts. The case should be DISMISSED from the docket of the court.

The Clerk is directed immediately to transmit the record in this case to the Hon. James H. Michael, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the

---

[13] It is noted, though certainly not critical to a determination here, that nothing tied the hands of any state or federal governmental agency from investigating the Landfill site or from revealing to other agencies the information which the citizen-litigants had turned over to them well in advance of reaching a settlement in the case. Interestingly, the citizen-litigants alleged in their Second Amended Complaint that on April 9, 1997, and again on February 24, 1999, they gave notice and supplemental notice to the EPA, its regional director, the Attorney General of the United States, and the Virginia Department of Environmental Quality ("DEQ") of the specific violations about which they were complaining. One notice preceded the settlement by three years and the other by two years. *See Gertrude Weber v. Rivanna Waste Storage Authority*, 3:98CV00109, Docket Entry # 29, Second Amended Complaint ¶¶ 13-14.

Case 3:04-cv-00081-NKM-JGW   Document 24   Filed 04/14/05   Page 32 of 33   Pageid#: 126

undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

*April 14, 2005*
Date