IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION
CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
DEC 2 2 2005
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

PATRICIA STEPHENS,

                *Plaintiff*,

v.

COUNTY OF ALBEMARLE,

CITY OF CHARLOTTESVILLE,

RIVANNA SOLID WASTE AUTHORITY,

                *Defendants*.

CIVIL ACTION NO. 3:04CV00081

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

Before the Court is the Plaintiff's Motion to Alter or Amend Judgment, filed on September 12, 2005 pursuant to Fed. R. Civ. P. 59(e). In this motion, the Plaintiff moves the Court to reconsider its August 26, 2005 order dismissing her claims. That order addressed three motions filed by the Defendants in response to claims filed by the Plaintiff pursuant to 42 U.S.C. § 1983 for alleged violations of the First Amendment of the United States Constitution and the Due Process Clause of the Fourteenth Amendment. The Defendants' motions are: (1) a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); (2) a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1); and (3) a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In its August 26, 2005 opinion, the Court denied the motion to dismiss for lack of subject matter jurisdiction, but granted dismissal of the

First Amendment claims for lack of standing and granted dismissal of the Due Process claim for failure to state a claim. The Plaintiff has filed this Motion to Alter or Amend Judgment only with respect to the Court's decision to dismiss her First Amendment claims on grounds of standing.

Having reconsidered this matter, the Court agrees with the Plaintiff that she has standing to assert a claim under the First Amendment and that, consequently, her complaint has stated a claim on which relief may be granted.

**I. Facts**

On October 15, 2004, Patricia Stephens (the "Plaintiff") filed a complaint against the County of Albemarle, the City of Charlottesville, and the Rivanna Solid Waste Authority (the "RSWA") (collectively, the "Defendants") under 42 U.S.C. § 1983 on behalf of her decedent husband and herself, seeking damages for alleged violations of both her and her husband's constitutional rights secured by the First and Fourteenth Amendments of the United States Constitution. The origins of her claim go back to 1998, when various neighbors of the Ivy Landfill, which is operated by the Defendants, all governmental entities, sued the Defendants for environmental violations at the landfill. *Weber v. Rivanna Solid Waste Authority*, 3:98CV00109 (W.D.Va. 1998). A number of the citizen-plaintiffs ultimately settled with the Defendants and the court, under presiding United States District Judge James H. Michael, approved these settlements and dismissed the case.[1] In return for the Defendants' agreement to certain waste disposal, monitoring, and remediation measures, the settling plaintiffs agreed to refrain from

---

[1] The claims of four other citizen-plaintiffs were voluntarily dismissed, subject to Tolling Agreement(s) giving these plaintiffs the right to reinstitute proceedings withing a specified period of time. Such time has passed and no further actions have been instituted.

engaging in certain forms of opposition to the Defendants with respect to the landfill. The Plaintiff alleges that in settling these claims, the Defendants coerced or purchased the silence of the citizen-plaintiffs on safety matters pertaining to the landfill. She alleges that one such settlement required some of the *Weber* plaintiffs to

> agree to remove the Ivy Steering Committee website and any language or images from any personal websites and billboards, from the public domain which deal with any of the matters raised in the Action or with respect to the Ivy landfill. Further the [plaintiffs] will cease opposition to the Ivy landfill and any further permits for which it may apply, will refrain from directly or indirectly opposing the landfill or permitting, will make no private or public adverse comments about the landfill, and will not engage or solicit from others any opposition to or legal action opposed to said landfill or its permitting process.

The record in *Weber* includes two settlements. One settlement was filed under seal and is not currently available to the public. *See Weber*, 3:98CV00109 (document # 56). Another settlement, however, was not filed under seal and is contained in the record at document number 64. This settlement included an agreement on the part of the plaintiffs to not oppose the issuance of a permit to the RSWA for a certain type of waste disposal cell. This settlement defines "opposing" to include activities such as presenting oral comments at any public hearing in opposition to the permit, making statements to the press in opposition to the permit, and providing documents to the relevant authorities for the express purpose of opposing the permit. This settlement also required the plaintiffs to remove a website that they had created in opposition to the landfill as well as any language or images on any other personal websites or billboards dealing with matters raised in the litigation. However, it did not prohibit the plaintiffs from making "private or public adverse comments about the landfill" in general.

The Plaintiff alleges that the provisions to which the settling plaintiffs agreed led to her husband's death in an explosion at the landfill, where he worked as an employee of the RSWA.

3

On April 10, 2003, the decedent died as a result of an explosion that occurred when he was cutting up old oil storage tanks at the landfill, a practice which the Plaintiff alleges is a "serious" OSHA violation. The Plaintiff claims that, if not for these provisions requiring the settling plaintiffs to cease their opposition to the Defendants, this practice would have been exposed as an OSHA violation and these practices would have been terminated or the decedent would have refused to engage in them before the date of the accident that resulted in his death.

Although the Plaintiff's complaint includes a count for violation of her and her husband's rights to Due Process under the Fourteenth Amendment, she moves the Court to Amend or Alter Judgment only with respect to her First Amendment claims. In Count I ("Violation of First Amendment proximately causing death"), the Plaintiff claims that the Defendants violated the decedent's First Amendment right to receive speech and proximately caused his death when they "purchased silence or otherwise gagged those knowledgeable about safety problems" at the landfill. Count III involves purely constitutional claims, asserting that the Defendants violated the First Amendment rights of the Plaintiff and her decedent husband to receive speech concerning the landfill from the settling plaintiffs. Thus, the Plaintiff brings Counts I in her representative capacity and Count III in her individual and representative capacity.

## II. Standard of Review

*A. Motion to Dismiss*

In deciding any motion to dismiss under Rule 12(b), a court must construe the plaintiff's pleadings liberally, taking all facts alleged in the complaint as true and resolving all doubts and drawing all reasonable inference in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999); Charles Alan

4

Wright and Arthur Miller, Federal Practice and Procedure § 1363 at 463 (West Supp. 2004). However, a court is not required to accept any legal conclusions offered by the plaintiff in the complaint. *United Mine Workers of America, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979). On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the burden of proving subject matter jurisdiction lies with the plaintiff. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Evans v. B.F. Perkins Co., a Div. Of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). A motion to dismiss for failure to state a claim under Rule 12(b)(6) must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

*B. Motion to Alter or Amend Judgment*

A Rule 59(e) motion "is discretionary" and need not be granted unless the district court finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *National Trust v. Department of State*, 834 F. Supp. 453, 455 (D.D.C 1993), aff'd in part and rev'd in part on other grounds sub nom. *Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750 (D.C. Cir. 1995) (quoting *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), cert. denied 506 U.S. 820 (1992)). Rule 59(e) motions may not be used by a party to raise arguments which could have been raised prior to judgment or to enable a party to continue presenting his case after a court has ruled against him. *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995) and *In re: Reese*, 91 F.3d 37, 39 (7th Cir. 1996). The rule does, however, permit

5

a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Id.* (quoting *Russell*, 51 F.3d at 749).

### III. Discussion

#### A. Motion to Alter or Amend Judgment

The Plaintiff maintains that the Court should alter or amend its judgment for two reasons. First, the Plaintiff points to the fact that the *Weber* case contained a second, sealed settlement agreement which was not judicially noticed in the Court's opinion even though the non-sealed one was. Second, the Plaintiff contends that the opinion incorrectly applied Rule 12(b) and that merely alleging the existence of willing speakers is enough to allow her claim to survive a motion to dismiss.

The Court acknowledges that the Plaintiff has correctly pointed out that *Weber* contained another settlement agreement which was not judicially noticed in the Court's memorandum opinion. In her objections to the Magistrate's Report and Recommendation, the Plaintiff objected to the Magistrate's judicial notice of the non-sealed settlement at document number 64 and stated that it was her "understanding" that the Defendants had conducted another settlement with other litigants. The Court, however, found that the Magistrate's taking of judicial notice of the non-sealed settlement was appropriate and noted that the Plaintiff should indicate which other settlements she would have the Court notice rather than resting on her understanding of them. The opinion, accordingly, took judicial notice of the non-sealed settlement and conducted its analysis according to the terms therein rather than according to the settlement as alleged by the Plaintiff. In retrospect, the Court finds that this approach was erroneous and unduly prejudicial to the Plaintiff in light of the fact that *Weber* contained a second, sealed settlement, the presence

6

of which the Court overlooked while writing its opinion.

A considerable portion of the August 26, 2005 opinion related to the constitutionality of the terms contained in the non-sealed settlement. However, because there exists another settlement which remains under seal, the Court does not find it appropriate to judicially notice the terms contained therein while the settlement remains unavailable to the public, including the Plaintiff. Thus, the Court finds that the better approach is to conduct its analysis according to the terms alleged by the Plaintiff rather than according to terms publically available in the non-sealed settlement. Such an approach also better comports with the Court's obligation to construe the Plaintiff's complaint liberally and take all of its allegations as true during a motion to dismiss under Rule 12(b). Accordingly, the Court will reconsider its opinion of August 26, 2005.

*B. Motion to Dismiss First Amendment Claims for Lack of Standing*

The doctrine of standing contains three essential requirements: (1) the plaintiff must have suffered an invasion of a legally protected interest; (2) there must be a causal link between the injury and the conduct complained of such that the injury is fairly traceable to the actions of the defendant; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As the party invoking federal jurisdiction, the Plaintiff bears the burden of establishing these elements. *Id.* at 561. However, because this case is at the pleading stage, general factual allegations of injury resulting from the Defendants' conduct will suffice because the general allegations are presumed to embrace those specific facts necessary to support the claim. *Id.*

The Defendants move the Court to dismiss the Plaintiff's First Amendment claims for lack of standing. For purposes relating to the Plaintiff's Motion to Alter or Amend Judgment, the

Court will only address the Defendant's argument that the Plaintiff fails to articulate a violation of her or her husband's First Amendment rights to free speech. The Defendants argue that the disputed settlement provisions only implicate the First Amendment rights of the settling plaintiffs and not those of the instant Plaintiff or her decedent, who were not parties to that Agreement or in any way involved in the litigation against the Defendants. They go on to assert that neither the Plaintiff nor her decedent had a right to receive information about the landfill from the settling plaintiffs because they were not willing speakers, as evidenced by their agreement to cease opposition to the landfill. This motion, therefore, asserts that the Plaintiff has no standing to raise these First Amendment claims because she does not articulate any legally protected right to receive speech concerning the landfill from the Settling Plaintiffs.

The Plaintiff contends that her complaint does allege an invasion of First Amendment rights to free speech belonging to her and her husband, thereby satisfying the injury element of the *Lujan* test for standing. The Plaintiff's claim that the Defendants violated her and her husband's First Amendment rights is grounded on two arguments. First, she argues that as members of the public who stood to be affected by the landfill's operations, she and her husband had a First Amendment right to receive speech concerning the landfill's operations from the settling plaintiffs, who had willingly spoken out against the landfill prior to the settlement. Second, she argues that the Defendants violated this right to receive speech by unconstitutionally inducing the settling plaintiffs to give up their right to oppose the landfill in exchange for safe drinking water.

The Plaintiff's claim rests upon two doctrines which are well established in constitutional jurisprudence. Her claim, however, is novel to the extent that her request for relief seeks to

combine both of these theories. The first doctrine underpinning the Plaintiff's claim is the unconstitutional conditions doctrine. This doctrine serves to prevent the government from conditioning the receipt of government benefits, even when discretionary, on the relinquishment of one's constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Courts have applied this doctrine with special vigor in the First Amendment context in order to protect one's right to speak freely from undue governmental interference. *See, e.g., Cantwell v. Connecticut*, 310 U.S. 296 (1940); *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503 (1969); and *Pickering v. Board of Education*, 391 U.S. 563 (1968). In determining whether the condition is unconstitutional, courts will balance the right surrendered against the government's interest in efficiently providing benefits and services. *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 676 (1996).

The second constitutional foundation on which the Plaintiff's claim rests is the First Amendment right to receive speech. The right to receive speech has long been recognized as a necessary component of protecting freedom of speech, *see Stanley v. Georgia*, 394 U.S. 557, 564 (1969), yet it is also a right that is contingent on the willingness of others to speak. *See Virginia State Bd. of Pharmacy v. Virginia Consumer Council*, 425 U.S. 748, 756 (1976). Where a willing speaker exists, "the protection afforded [by the First Amendment] is to the communication, to its source and to its recipients both." *Id.* Conversely, a plaintiff does not have standing to assert a right to receive speech where he cannot show that there exists a speaker willing to convey information to him. *See, e.g., FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838-839 (3rd Cir. 1996).

While each prong of the Plaintiff's claim is grounded in constitutional precedent, what is

9

truly novel is her attempt to apply both in tandem and argue that a settlement between the government and citizen litigants involving an agreement to refrain from certain forms of speech has violated the right of third-party non-litigants to receive speech. Whether such an assertion may state a claim entitling the Plaintiff to relief, consequently, turns on (1) whether the Plaintiff has alleged an unconstitutional condition on a governmental benefit and (2) whether such an unconstitutional silencing of a speaker implicates the Plaintiff's right to receive speech. The Court will address these issues *in seriatim*.

The Plaintiff asserts that the Defendants unconstitutionally silenced multiple citizen plaintiffs in *Weber* by entering into settlement agreements with them that conditioned the receipt of safe drinking water and other benefits on the relinquishment of their right to engage in speech opposed to the Defendants. Whether such a provision could amount to an unconstitutional condition depends, initially, on whether this doctrine applies in the context of court-approved settlement agreements.

The Court finds that viewing the unconstitutional conditions doctrine in relation to a waiver of one's constitutional rights is a helpful starting point for determining whether this doctrine applies to offers of settlement. After all, the unconstitutional conditions doctrine essentially concerns when the government can use its power to distribute largess to induce citizens to effectively waive their constitutional rights in exchange for a receipt of benefits. With respect to settlements, the Court recognizes that the unconstitutional conditions doctrine could never apply as an absolute rule because all settlements between the government and citizen litigants involve a waiver of constitutional rights, such as the right to pursue further litigation in court. Yet it would vitiate the unconstitutional conditions doctrine to conclude that it cannot
10

apply to an offer of settlement simply because the condition constituted yet another right waived. If that were all it took, it is hard to see what would remain of the doctrine. The mere fact that one agrees to the challenged condition, even in a settlement, cannot by itself render the bargain constitutional because the unconstitutional conditions doctrine focuses on the propriety of the condition, not the fact that the claimant agreed to it. *Parks v. Watson*, 716 F.2d 646, 651 (9th Cir. 1983). Many cases, after all, involve a challenge to a condition to which the claimant has already agreed. *See, e.g., W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648 (1981); *Mansoor v. County of Albemarle*, 189 F. Supp. 2d 426 (W.D. Va. 2002); *Davies v. Grossmont Union High School District*, 930 F.2d 1390 (9th Cir. 1991).

Certainly, the litigation context is relevant, especially where the court approves the settlement and there is no unreasonable disparity of bargaining power. This judicial oversight will likely serve to mitigate the potential for abusive conditioning of governmental benefits in many cases. However, this should hardly serve as a basis for precluding the doctrine from applying in those instances where impermissible terms do become ratified in a settlement agreement. Giving effect to otherwise unconstitutional terms simply because of their ratification by settlement would effectively create a safe haven for impermissible restrictions, allowing the government to circumvent the unconstitutional conditions doctrine by going through the formality of a settlement agreement.[2] This would increase the risk that a settlement is less of a

---

[2] The proposition that the unconstitutional conditions doctrine applies to the settlement context is further supported by the fact that courts have often scrutinized waivers found in contractual agreements. *See, e.g., Mansoor*, 189 F. Supp. 2d at 433-437 (finding unconstitutional an employment agreement restricting an employee's right to criticize superiors at police department); *Lake James Community Volunteer Fire Department, Inc. v. Burke County*, 149 F.3d 277 (4th Cir. 1998) (balancing the constitutional right surrendered in a fire services contract with county against the county's interest in efficient provision of services); *Davies*, 930 F.2d at 1399

11

reasonable offer of compromise and more of a coercive attempt to extract waivers of constitutional rights from parties with diminished bargaining power.

Having found that a plaintiff may state a claim by alleging an unconstitutional condition in a settlement agreement, the Court must next address the issue of whether a settlement that unconstitutionally restricts a settling party's freedom of speech might violate a third party non-litigant's right to receive speech. This question clearly implicates important issues surrounding the non-litigant's standing and is further complicated where the settling party has not raised objections to the settlement terms. It is important to recognize, however, that the right to receive speech is itself a recognition that third parties can have standing to challenge speech restrictions affecting others. In *Virginia State Bd. of Pharmacy*, for example, the Court allowed a prescription drug purchaser and two nonprofit organizations to challenge a Virginia statute which restricted the right of pharmacists to advertise the price of their drugs, recognizing that First Amendment protection applies to the recipient of the communication as well as its source. *Id.* 425 U.S. at 756. This constitutional right "may be asserted" by the recipient. *Id.* at 757. Third party standing, moreover, does not require that the person subject to the restriction object, only that he be *willing* to speak. *Id.* at 756 (holding that First Amendment protections presuppose a willing speaker); *see also, FOCUS*, 75 F.3d at 838-839 (recognizing that third parties may challenge gag orders where "there is reason to believe that the individual subject to the gag order is willing to speak and is being restrained from doing so.").

---

(finding unconstitutional a term in a settlement agreement between a citizen and a school district whereby the citizen agreed to not run for public office in the district). Settlement agreements are contractual in nature and it is, therefore, not a stretch to conclude that the unconstitutional conditions doctrine would apply in similar fashion in this context as well.

12

Of course, the instant case is complicated by the fact that the restrictions in question were agreed to by the settling plaintiffs, unlike the pharmacists in *Virginia State Bd. of Pharmacy* who were subject to speech restrictions by state regulation. Another situation in which courts have addressed the right to receive speech involving speakers who have agreed to remain silent is in the context of court-imposed restrictions on extrajudicial speech during trials. Some courts have found that where a restraining order preventing parties at trial from speaking to the press are consented to or not challenged by those subject to the restriction, third parties such as the press cannot challenge the orders as unconstitutional prior restraints. For example, in *In re Application of Dow Jones & Co.*, 842 F.2d 603 (2d Cir. 1988), the Second Circuit heard a news agency's challenge to a court's restraining order which forbade all trial participants from engaging in extrajudicial speech during a trial. The court found that the news agency had standing to challenge the restraining order because it was a potential recipient of speech from parties who would be willing speakers in absence of the order. *Id.* at 608. However, the court went on to find that the news agency could not challenge the restraining order as a prior restraint because the order was requested by the trial participants.[3] *Id.*; *see also, Radio & Television News Ass'n. v. United States Dist. Court for Cent. Dist. of Ca.*, 781 F.2d 1443 (9th Cir. 1986) (holding that third party petitioner had no standing to challenge gag order imposed on trial counsel when trial counsel themselves did not challenge it). Similarly, the Defendants argue that the Plaintiff does not have standing to assert a right to receive speech from the settling plaintiffs in *Weber* because they voluntarily agreed to the speech limitations and, consequently, are not willing speakers. This argument has a certain amount of appeal, yet the Court finds it to be less

---

[3] The court did, however, allow the agency to challenge the order on other grounds.

13

Case 3:04-cv-00081-NKM-JGW   Document 36   Filed 12/22/05   Page 13 of 19   Pageid#: 284

persuasive given this case's context as a challenge to a forfeiture of speech as a result of an unconstitutional condition. As discussed above, it is often the case that an offer by the government to provide a benefit in return for the relinquishment of speech will result in a citizen agreeing to a condition and waiving particular constitutional rights. An important basis for the constitutional conditions doctrine, however, is that in some instances the condition itself is unconstitutional because of its power to coerce a citizen into unwillingly surrendering a constitutional right in exchange for a governmental benefit,[4] rendering of little import the fact that the citizen formally "agreed" to the exchange. Thus, the Court cannot presume as a matter of law that a party is not a willing speaker simply by having agreed to give up certain constitutional rights, especially where it is alleged that the term is unconstitutional on the grounds that it coerced a forfeiture of constitutional rights.

That being the case, it does not require much of a leap to conclude that a third party may challenge a restraint imposed on a willing speaker in the form of an unconstitutional condition rather than a more typical prior restraint. Although different in form, silencing a willing speaker by means of an unconstitutional condition is no less an infringement of that speaker's First Amendment Rights than silencing him through a prior restraint. The potential recipient's right to receive speech from that speaker, likewise, is no less diminished on account of the silence being achieved through an unconstitutional condition rather than a prior restraint in the form of a state

---

[4] *See, e.g., O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 721 (U.S. 1996) (finding coercion where city retaliated against independent contractor towing company for opposing mayor's re-election); *Keyishian v. Board of Regents of Univ. of State of N. Y.*, 385 U.S. 589 (1967) (finding unconstitutional a state regulation conditioning teaching position upon nonmembership in "subversive" organizations). *See also* Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 HARV. L. REV. 1415, 1428-55 (1989).

14

regulation or statute. By way of analogy, the Court doubts whether the outcome in *Virginia State Bd. of Pharmacy* would have been different had the pharmacists been silenced by having to agree to not advertise prescription drug prices as a condition for being able to practice their profession. Thus, the Court finds that a claimant may state a claim on which relief may be granted by alleging that a she was a potential recipient of speech from a willing speaker silenced as the result of an unconstitutional condition in a settlement agreement.

The Court will now examine whether the Plaintiff, with all of her facts accepted as true and with all reasonable inferences drawn in her favor, states a claim under such a theory. The Court finds that she does. The Plaintiff's complaint alleges the existence of one or more willing speakers restrained by the Defendants from speaking about conditions at the landfill. Certainly, the existence of the litigation in *Weber* indicates that there were those who were willing to speak out about dangerous conditions at the landfill. The provisions restricting the *Weber* plaintiffs' ability to oppose the landfill, moreover, indicates that even after the conclusion of the litigation some plaintiffs would be willing to continue voicing their concerns about the landfill.

The Defendants contend that the *Weber* plaintiffs cannot be considered willing speakers since they agreed to the speech provisions in settlement. This brings the Court to the point raised by the Plaintiff in her Motion to Alter or Amend Judgment that pleading the existence of willing speakers is sufficient to survive a motion to dismiss. The Plaintiff contends that a person can still be a willing speaker even though she may not be able to speak because of an agreement not to do so. She further suggests that any conclusion that a former speaker is no longer willing to speak because of an agreement to remain silent presupposes certain factual assumptions about the voluntariness of the agreement, which are premature before any discovery has taken place. After

15

reconsidering the matter, the Court agrees with the Plaintiff. While it could be true that the *Weber* plaintiffs are no longer willing to speak out against the landfill, the mere fact of their agreement to the speech provisions cannot foreclose the possibility of their willingness to speak, especially given the issues of coercive settlement terms raised by the Plaintiff. Whether they are in fact no longer willing speakers depends on factual assumptions relating to the voluntariness of the settlement and on the presence of other factors, not noticeable in the record in *Weber*, indicating that the speech provisions are void as unconstitutional conditions.[5] Such determinations necessarily depend on the ability of the parties to conduct discovery and, consequently, are inappropriate for purposes of a motion to dismiss.

The Plaintiff also alleges that she and her husband were potential recipients of speech from the *Weber* plaintiffs because they resided in Albemarle County in proximity to the landfill. The Court accepts this pleading as true for purposes of this motion to dismiss. *See Scheuer*, 416 U.S. at 236; *Edwards*, 178 F.3d at 243-244. Because the Plaintiff has alleged that willing speakers were restrained by the Defendants from speaking out to members of the public, including the Plaintiff and her husband, concerning conditions at the landfill, the Court concludes that the Plaintiff has standing, both in her personal capacity and in her capacity as the decedent's personal representative,[6] to assert First Amendment claims based on their right to receive speech.

---

[5] Certainly, the Court is free to judicially notice the literal terms of prior settlements in *Weber*, including those provisions wherein the parties represent their desire to voluntarily enter into settlement. However, it is quite another thing for the Court to conclude from that that the plaintiffs actually entered into the agreement voluntarily.

[6] The Court notes that under Virginia law, a decedent's personal representative may only bring a wrongful death claim on behalf of the decedent under Virginia's wrongful death statute, Va. Code Ann. § 8.01-50, but not for other claims, which do not survive. In an action brought pursuant to 42 U.S.C. § 1983, a federal court must adopt a state's survivorship law as the federal

*See Virginia State Bd. of Pharmacy*, at 425 U.S. at 757.

   C. *Motion to Dismiss for Failure to State a Claim*

In the memorandum opinion of August 26, 2005, the Court did not address the question of whether the Plaintiff's complaint stated a claim for violation of her and her husband's First Amendment right to receive speech due to already having dismissed her claim on standing grounds. The Court now addresses this issue because of its decision to alter its original judgment to find that the Plaintiff has standing to assert First Amendment claims.

The arguments raised by the Defendants in support of their motion to dismiss the Plaintiff's First Amendment claims for failure to state a claim parallel the arguments made with regard to standing. With respect to Count I, the Defendants assert that the Plaintiff fails to state a claim because she only asserts the First Amendment rights of the settling plaintiffs in *Weber* and because the causal link between the Defendants actions in settling the claims in *Weber* and the decedent's death is too attenuated and speculative to support causation. With respect to Count III, the count based purely on constitutional violations of the Plaintiff's and decedent's First Amendment rights, the Defendant claims that the Plaintiff has only pled violations of the

---

law governing the abatement of claims, provided that such law is not inconsistent with the Constitution and the laws of the United States. *Robertson v. Wegmann*, 436 U.S. 584 (1991). More specifically, "whenever a state survival statute would abate the action brought against defendants whose conduct results in death, the federal common law permits survival of the action." *O'Connor v. Several Unknown Correctional Officers*, 523 F. Supp. 1345, 1348 (E.D. Va. 1981) (citing *Carlson v. Green*, 446 U.S. 14 (1980)). That is exactly the situation here. Because the alleged First Amendment violations are the same acts that caused the decedent's death, it would be inconsistent with the policies of § 1983 to allow Virginia's survival law to prevent his personal representative from bringing alleged constitutional claims that the decedent could have brought if he were still alive. Thus, the Plaintiff has standing to bring her decedents husband's claims, both for wrongful death and for the violation of his First Amendment right to receive speech.

17

constitutional rights of the settling plaintiffs in *Weber* and has not alleged any facts that would allow for an award of damages.

As explained *supra* in the Court's standing analysis, the Plaintiff has pled a violation of her and her decedent husband's First Amendment right to receive speech and, therefore, has stated a claim for which relief may be granted. Similarly, the Court has already ruled in its prior opinion that the Plaintiff has adequately pled causation for purposes of standing and finds the same with respect to whether the Plaintiff has stated a claim. Although the chain of causation alleged is certainly indirect, it would be premature to hold that it is too attenuated to state a claim before any discovery has occurred. Finally, the Defendants are mistaken in contending that Count III should be dismissed for failing to allege actual damages resulting from the violation of the First Amendment. While a plaintiff must prove actual injuries beyond an abstract violation of her constitutional rights in order to recover compensatory damages, a plaintiff who cannot do so can nonetheless maintain an action and recover nominal damages. *See Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986); *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978); *Burt v. Abel*, 585 F.2d 613, 616 (4th Cir. 1978). Thus, even if the Plaintiff was unable to show that the settlement provisions proximately caused the decedent's death, she could still maintain an action for recovery of nominal damages for any violation of her or her husband's right to receive speech. Accordingly, the Court will deny the Defendant's motion to dismiss Counts I and III for failure to state a claim.

## IV. Conclusion

In conclusion, for the above stated reasons, the Court shall GRANT the Plaintiff's Motion to Alter or Amend Judgment. Pursuant to this decision, the Court shall DENY the Defendants'

18

Motion to Dismiss for Lack of Standing and Motion to Dismiss for Failure to State a Claim as to Counts I and III of the Plaintiff's complaint. The Court's opinion and order of August 26, 2005 shall in all other respects remain in effect.

The Clerk of the Court hereby is directed to send a certified copy of this Order to all counsel of record and to Magistrate Judge Crigler.

ENTERED: *[signature]*
United States District Judge

*December 22, 2005*
Date

19

Case 3:04-cv-00081-NKM-JGW Document 36 Filed 12/22/05 Page 19 of 19 Pageid#: 290