CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7n C'Ville
MAR 17 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PATRICIA STEPHENS,<br><br>　　　　　　　　　　*Plaintiff,*<br><br>v.<br><br>COUNTY OF ALBEMARLE,<br><br>CITY OF CHARLOTTESVILLE,<br><br>RIVANNA SOLID WASTE AUTHORITY,<br><br>　　　　　　　　　　*Defendants.* | CIVIL ACTION NO. 3:04CV00081<br><br><br><br>MEMORANDUM OPINION<br><br><br><br>JUDGE NORMAN K. MOON |

Before the Court is the Plaintiff's February 9, 2006 Motion to Unseal and/or to Disclose Sealed Settlement and to Authorize Silenced Parties to Speak About the Matters of this Case. The Defendants filed a response opposing the Plaintiff's Motion on February 23, 2006. The matter is therefore ripe for the Court's determination.

**I. Facts**

On October 15, 2004, Patricia Stephens (the "Plaintiff") filed a complaint against the County of Albemarle, the City of Charlottesville, and the Rivanna Solid Waste Authority (the "RSWA") (collectively, the "Defendants") under 42 U.S.C. § 1983 on behalf of her decedent husband and herself, seeking damages for alleged violations of both her and her husband's constitutional rights secured by the First and Fourteenth Amendments of the United States

1

Constitution. The origins of her claim go back to 1998, when various neighbors of the Ivy Landfill, which is operated by the Defendants, all governmental entities, sued the Defendants for environmental violations at the landfill. *Weber v. Rivanna Solid Waste Authority*, 3:98CV00109 (W.D.Va. 1998). A number of the citizen-plaintiffs ultimately settled with the Defendants and the Court, under presiding United States District Judge James H. Michael, approved these settlements and dismissed the case.

The Plaintiff alleges that in these settlements the Defendants required the citizen-plaintiffs to cease all opposition to the landfill, including refraining from making any public or private comments adverse to the landfill, as a condition for the implementation of certain waste disposal, monitoring, and remediation measures. In substance, she characterizes the settlement as trading constitutional rights for clean drinking water. She further claims that these provisions led to her husband's death in an explosion at the landfill, where he worked as an employee of the RSWA. On April 10, 2003, the decedent died as a result of an explosion that occurred when he was cutting up old oil storage tanks at the landfill, a practice which the Plaintiff alleges is a "serious" OSHA violation. The Plaintiff claims that, if not for these provisions requiring the settling plaintiffs to cease their opposition to the Defendants, this practice would have been exposed as an OSHA violation and these practices would have been terminated or the decedent would have refused to engage in them before the date of the accident that resulted in his death. She also charges that the terms of the settlements unconstitutionally silenced the citizen-plaintiffs in *Weber* and thereby violated her and her husband's First Amendment right to receive speech from the them.

The record in *Weber* includes two settlement agreements, one of which was approved and

2

filed under seal by order of Judge Michael on June 16, 2000. *See Weber*, 3:98CV00109 (W.D.Va. 1998) (document # 56). That settlement, along with the Court's approval and seal order, remain under seal to this day. The Plaintiff now moves the Court to unseal this settlement agreement in order to investigate her claim that the settling plaintiffs in *Weber* were unconstitutionally silenced by the Defendants.

## II. Discussion

### A. Rights of Access to Sealed Court Documents

Because the Plaintiff was not a party to the settlement in *Weber*, she must show that she, as a member of the public, has a right of access to the settlement. The public's right to access documents filed with a court is derived from two sources: the First Amendment and the common law. When a litigant moves for access to a document filed under seal, it is critical to establish which source is being invoked since the First Amendment and the common law provide rights of access different in scope and in strength. *In re Baltimore Sun v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)

Generally speaking, the First Amendment right of access applies to a narrower range of materials, yet weighs more heavily in favor of the public's right to obtain those sealed documents. A court must consider two factors in determining whether a given document under seal is subject to the First Amendment right of access: (1) "whether the place and process have historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *In re Baltimore Sun*, 886 F.2d at 64, (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10 (1986)). Where the First Amendment is found to apply, the public's right to access the sealed document

3

can only be denied on the basis of a compelling governmental interest, and only then if the denial is narrowly tailored to serve that interest. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982).

The common law right of public access, on the other hand, presumptively applies to all judicial records and documents. *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 178 (4th Cir. 1988); *Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978). However, the right of access afforded by the common law is weaker than that of the First Amendment. Courts considering the common law right of access are to apply a balancing test, weighing the interest in confidentiality against the interest in public access. *See Nixon*, 435 U.S. at 589; and *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 178 (4th Cir. 1988). If the interests in confidentiality outweigh the interest in public access, the common law presumption in favor of access is rebutted and the document may remain under seal. *Stone*, 855 F.2d at 180. The Fourth Circuit has articulated a number of factors to consider when conducting this balancing test, including whether the records are sought for improper purposes such as promoting public scandals or gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records. *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

One final point to note is that the Fourth Circuit requires a court to follow certain procedures when placing a judicial record under seal. First, a court is required to give the public notice of a request to seal and a reasonable opportunity to challenge it. *Id.* Second, a court must provide interested person an opportunity to object to the request. *Id.* Third, a court must consider

4

less drastic alternatives to sealing and, if the court decides to seal the document, must state the reasons for its decision supported by specific findings and the reasons for rejecting the alternatives. *Id.* Although *Knight* established these procedures with respect to criminal proceedings, the Fourth Circuit has since extended them to civil cases. *See, e.g., Stone*, 855 F.2d at 180.

*B. Application to this Case*

The Plaintiff fails to identify which theory of public access she is pursuing, nor does she point to any legal authority to support her request. Instead, she simply states that the settlement should be unsealed in order for her to conduct discovery and advance her case. The Defendants, on the other hand, "believe there are reasons the sealed agreement should remain under seal," yet they do not bother to state what those reasons are other than noting that they are bound by confidentiality provisions of the agreement. (Def.'s Resp. to Pl.'s Mot. to Unseal at 2).

Turning to the two sources of the right of access to judicial records, the Court will apply only the common law balancing test to this case since this proves dispositive of the issue. Although the Defendants do not supply specific reasons for why this settlement agreement should remain off-limits to the public or the Plaintiff in particular, they do invoke an interest in confidentiality in more generic terms. In the context of settlement agreements, the Court is well aware that confidentiality may be of paramount concern to the parties, especially where one side fears that publicity of a settlement might encourage further litigation. Subjecting a settlement to terms of confidentiality can play an important role in allaying those concerns, thereby facilitating settlement and avoiding protracted litigation. An early and amicable settlement is certainly a desirable outcome, and for that reason courts regularly enforce confidentiality provisions in

settlement agreements. An additional reason for this is that settlements are purely private contractual matters when not filed with the court, which is typically the case. *See, e.g, Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (D. Ala. 2003); and *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002). Settlements not filed with the court do not become a public record and, therefore, the public right of access to judicial records is not implicated. *Jessup*, 277 F.3d at 928.

The equation changes dramatically when settlement agreements are filed with the court for its approval. In such instances, the settlement agreement becomes a part of the judicial record, triggering the public's interest in access. *See, e.g., Stalnaker*, 293 F. Supp. 2d at 1263; *Jessup*, 277 F.3d at 928; *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986). The Defendants elected to file the settlement agreement in question with the Court for its approval and therefore cannot claim as strong an interest in confidentiality as would be the case if they had concluded the settlement in a purely private manner without the assistance of the Court. The Court, therefore, finds that the interests in confidentiality are weak from the start on account of the Defendants' decision to file the settlement in court.

Beyond the weak interest in confidentiality, there are many factors which weigh strongly in favor of unsealing the settlement and allowing the Plaintiff access to it. First, the fact that the settlement was approved by the Court is of eminent importance. Judicial approval of a settlement is a public act and the public has a significant interest is knowing what kinds of terms the courts are approving. *See Jessup*, 277 F.3d at 929. Disclosure, therefore, is important in checking the integrity of the courts and allowing the public to know whether they are using their authority to approve settlements that further the interests of justice. *See id.*, and *Bank of Am. Nat'l*

6

*Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986).

Second, the fact that the Defendants are all governmental entities is compelling as well. The public's interest in accessing a settlement forming part of the public record is strong enough as it is, but it becomes even more so when the government is a party to that agreement. In such cases, the right of access plays an important role in giving the public oversight of the government's actions, an interest long recognized by the courts. *See, e.g., Nixon*, 435 U.S. at 597-598 (noting that the right of access is especially important when sought to keep a watchful eye on the workings of public agencies); *see also State ex rel. Colscott v. King*, 154 Ind. 621 (Ind. 1900) (holding that a group of concerned citizens could have access to files relating to county officials' possible conversion of funds); *State ex rel. Ferry v. Williams*, 41 N.J.L. 332, 336 (N.J. Sup. Ct. 1879) (allowing a taxpayer access to papers related to applications for licenses to sell alcohol when taxpayer thought that law was not being followed).

Third, it should be noted that the Plaintiff is not seeking disclosure of the settlement for any improper purpose such as gratifying personal spite or obtaining an improper business advantage. *See Nixon*, 435 U.S. at 598. To the contrary, the Plaintiff has raised important questions about the propriety of the Defendants' actions, as public entities, in securing settlement by bargaining for a cessation of opposition to matters at the landfill. Certainly, this is not an improper motive.

Finally, it should be noted that in approving the settlement and ordering that it be filed under seal, Judge Michael's order did not comply with Fourth Circuit requirements elaborated in *Knight* and *Stone*. The Court's order approving and sealing the settlement was itself filed under seal and, therefore, deprived the public of notice and the opportunity to object. Nor did the

7

Court's order discuss the reasons for sealing the settlement or evaluate alternatives less restrictive than sealing it. There is consequently not an indication of the reasons for why the public's right of access should be abridged with respect to this settlement. Considering, furthermore, that the Defendants have also failed to elaborate at any length about why their settlement should be off-limits to the public, no compelling reason at all has been offered in favor of keeping this settlement sealed. The Court, therefore, sees no reason for why the Plaintiff or the general public should be denied access to the settlement. The settlement will be unsealed.

### C. *The Weber Plaintiffs' Participation in this Case*

The Plaintiff also states that the settling plaintiffs in *Weber* are either silenced or consider themselves silenced by their settlement agreements and moves the Court to authorize them to speak freely in the context of this case, provided that their discussions remain under protective order. The Defendants oppose this request and object to the parties to the settlement agreement being able to discuss matters covered by the confidentiality provision.

Upon review of the Plaintiff's motion, the Court finds that the Plaintiff's blanket request for the Court to pro-actively authorize those *Weber* plaintiffs subject to confidentiality agreements to speak freely in the context of this case is not an appropriate procedure for authorizing their participation in this case. For one, confidentiality is a term bargained for in the heretofore sealed settlement and, in fact, is incorporated into the Court order approving the settlement. The Plaintiff, therefore, essentially asks the Court to undo the Defendants' expectation and right of confidentiality. Undoubtedly the promise of confidentiality played an important role in securing the settlement in question and is a contractual term upon which the Defendants should justifiably be able to rely, especially where incorporated into a court order.

8

*See, e.g., Peskoff v. Faber*, 2006 U.S. Dist. LEXIS 6688, *17 (D.D.C. 2006). (refusing to compel production of information protected by a confidentiality agreement ordered or agreed by another court). Therefore, the Court will not abrogate the expectation of confidentiality bargained for by the Defendants and secured by this Court without the Plaintiff having shown compelling need. *See, e.g., Flynn v. Portland General Electric Corp.*, 1989 U.S. Dist. LEXIS 11219, *4 (D. Or. 1989) ("[T]he strong public policy favoring settlement of disputed claims dictates that confidentiality agreements regarding such settlements not be lightly abrogated.").

The Plaintiff's request is furthermore inappropriate in that the Federal Rules of Civil Procedure contemplate appropriate procedures for dealing with disputes over allowing or compelling witnesses subject to confidentiality provisions to give deposition testimony. An upfront request to ignore Court orders of confidentiality is not such an appropriate procedure. If a witness whose deposition testimony is sought refuses to testify out of concerns for confidentiality obligations, the deposing party may move to compel cooperation pursuant to FED. R. CIV. P. 37(a)(2)(B). The opposing party, of course, may oppose such motion or move for a protective order pursuant to Rule 26(c). This scheme is clearly preferable to the form of the Plaintiff's request given its support in the rules and its appearance in other cases dealing with similar situations. *See, e.g., Peskoff*, 2006 U.S. Dist. LEXIS 6688; *Hamad v. Graphic Arts Ctr.*, 1997 U.S. Dist. LEXIS 249 (D. Or. 1997); and *Flynn v. Portland General Electric Corp.*, 1989 U.S. Dist. LEXIS 11219 (D. Or. 1989). Therefore, the Court declines to "authorize" the *Weber* plaintiffs to speak in violation of their confidentiality agreements at this juncture.

### III. Conclusion

For the reasons herein stated, the Plaintiff's motion will be granted in part and denied in

9

part. The Plaintiff's motion to unseal the settlement agreement at *Weber v. Rivanna Solid Waste Authority*, 3:98CV00109 (W.D.Va. 1998) (document # 56), shall be granted. The Plaintiff's motion to "authorize" parties in that action who are subject to confidentiality orders to violate said orders will be denied. An appropriate order this day shall issue.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: /s/ Norman K. Moon
United States District Judge

March 17, 2006
Date

10