CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
APR 18 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PATRICIA STEPHENS, *on behalf of herself, and as Executrix for the Estate of* WAYNE STEPHENS, *husband, decedent,*<br>                                      *Plaintiff,*<br><br>v.<br><br>COUNTY OF ALBEMARLE,<br>CITY OF CHARLOTTESVILLE, AND<br>RIVANNA SOLID WASTE AUTHORITY,<br>                                      *Defendants* | CIVIL NO. 3:04cv00081<br><br><br><br><br>MEMORANDUM OPINION<br><br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion for Summary Judgment, filed on September 15, 2006 (docket entry no. 53) and on Plaintiff's Motion for Summary Judgment, filed on September 25, 2006 (docket entry no. 55). For the following reasons, Defendants' motion will be GRANTED and Plaintiff's motion will be DENIED, both in an order to follow.

### I. Background

Plaintiff Patricia Stephens sued the County of Albemarle, the City of Charlottesville, and the Rivanna Solid Waste Authority ("RSWA") (collectively, "Defendants") under 42 U.S.C. § 1983 on behalf of herself and her decedent husband, seeking damages for alleged violations of both her and her husband's constitutional rights secured by the First and Fourteenth Amendments of the United States Constitution. Her claims originate from a civil case filed by various neighbors (but not Plaintiff) of the Ivy Landfill, which is operated by Defendants, against Defendants. *See Weber v. Rivanna Solid Waste Authority*, 3:98cv00109 (W.D. Va. 1998). Two settlement agreements resulted from the *Weber* action: the so-called "Booth Agreement" and the

so-called "Burke Agreement."

In the Booth Agreement, Defendants agreed to purchase the Booths' property; in exchange, the Booths agreed to the following provisions: (1) remove information from the Internet and from billboards that dealt with any of the matters raised in the *Weber* action or with any matters with respect to the Ivy Landfill; (2) cease opposition to the Ivy Landfill; (3) refrain from directly or indirectly opposing the landfill; (4) make no further private or public adverse comments about the landfill; and (5) "not engage or solicit from others any opposition to or legal action opposed to" the landfill.

In the Burke Agreement,[1] Defendants agreed to (1) modify a pending permit application; (2) establish a program to prevent hazardous waste from being disposed in two cells at the landfill; (3) continue to refuse to accept certain waste; (4) not dispose of certain waste in certain cells; (5) continue to monitor groundwater; (6) purchase certain property of certain plaintiffs; (7) install water treatment devices should groundwater contamination exceed a certain level; (8) provide plaintiffs with potable water should contamination exceed EPA standards; (9) monitor air quality levels; (10) pay CERCLA costs; and (11) pay attorneys' fees. In exchange for all of these agreements—except (7) and (8)[2]—the Burke plaintiffs agreed to the following provisions: (1) not oppose the issuance of a permit to RSWA for a certain type of waste disposal cell;[3] (2) remove a website opposing the landfill; and (3) remove information from any other website or billboard dealing with matters raised in the *Weber* litigation. Nothing in the Burke Agreement

---

[1] Plaintiff argues that the Court may not consider the Burke Agreement because its terms dictate that it may not be used in subsequent litigation. The Court has already taken judicial notice of the Burke Agreement; regardless, Plaintiff cannot base her legal theory on the contents of the Burke Agreement and simultaneously ask the Court to interpret the agreement based not on the explicit terms of that agreement but instead on Burke's interpretation of it.

[2] According to the terms of the Burke Agreement, the Defendants' obligations regarding the water treatment devices and providing potable water are not contingent upon the Burke plaintiffs fulfilling their obligations.

[3] "Oppose" is defined as activities such as presenting oral comments at public hearings in opposition to the permit, making statements to the press in opposition to the permit, and providing documents to relevant authorities

- 2 -

Case 3:04-cv-00081-NKM-JGW   Document 80   Filed 04/18/07   Page 2 of 7   Pageid#: 793

indicates that the Burke plaintiffs could not make private or public adverse comments of a general nature about the landfill, as is the case for the Booth plaintiffs.

Plaintiff claims that these settlement provisions eventually led to her husband's death. Plaintiff's husband was employed by RSWA and died on April 10, 2003, as a result of an explosion that occurred while he was cutting old oil storage tanks ("the practice"). Plaintiff claims that if not for the provisions requiring the *Weber* plaintiffs to cease their opposition to Defendants' activities at the landfill, the practice would have been exposed as a violation of regulations promulgated by the Occupational Safety & Health Administration ("OSHA"), resulting in the practice being terminated or in her husband refusing to engage in the practice prior to his death.

Two of Plaintiff's original claims survive: (1) Defendants violated Plaintiff's and decedent's First Amendment right to receive speech (Count III) and (2) this violation proximately caused decedent's death (Count I). Both parties agree that resolution of the question of whether either *Weber* agreement violates the unconstitutional conditions doctrine controls the outcome in this case: if the unconstitutional conditions doctrine has been violated, the parties can move to the issue of causation; if not, Plaintiffs claims must fail.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and

---

for the express purpose of opposing the permit.

drawing reasonable inferences in the light most favorable to the nonmoving party determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc,* 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' … an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324.

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but … [must] by affidavits or as otherwise provided in … [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman,* 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson,* 477 U.S. at 242). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex,* 477

- 4 -

U.S. at 317).

## III. Discussion

As can be distilled from two prior opinions in this case (*see* Mem. Op., Aug. 26, 2005 ("August opinion"); Mem. Op., Dec. 22, 2005 ("December opinion")), Plaintiff has a right to receive information so long as there is a willing speaker. Here, Plaintiff alleges that there are willing speakers—the *Weber* plaintiffs—but that those speakers have been silenced via the Booth and Burke Agreements, agreements that she argues constitute an unconstitutional condition on a government benefit.

The unconstitutional conditions doctrine states that "the government may not deny a benefit to a person on a basis that infringes his constitutionally protected ... freedom of speech even if he has no entitlement to that benefit." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 126 S. Ct. 1297, 1306–07 (2006) (omission in original); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[The government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."). The doctrine necessarily requires that there be a government benefit and that the benefit be conditioned on a party giving up certain constitutional rights.

With respect to the Booth Agreement, Defendants have established that Plaintiff's earlier contentions that the Booths were receiving safe drinking water from the government are unfounded (i.e., the Booths were receiving their drinking water from a private well) and, more importantly, that the Booth Agreement itself—by its own terms—does not reveal a government benefit that would trigger the unconstitutional conditions doctrine. The only benefit in the Booth Agreement is the payment of money to the Booths in exchange for their property. There is no term or condition related to safe drinking water in the Booth Agreement. Having established this

- 5 -

Case 3:04-cv-00081-NKM-JGW   Document 80   Filed 04/18/07   Page 5 of 7   Pageid#: 796

point, the burden then shifts to Plaintiff, the nonmoving party; if Plaintiff fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the Court must grant summary judgment for the movant.

In her memorandum in response, Plaintiff characterizes the benefit as "the Defendants gave the Booths money to allow them to move from their contaminated home" and as "the money to allow [the Booths] to move away from their dream home" and "being able to live in an uncontaminated home."[4] Because, she argues, "Defendants have failed to prove that there was no unconstitutional condition" in the Booth Agreement, summary judgment for Defendants would be improper. Plaintiff misses the point: Defendants have discharged their duty under the summary judgment standard by showing that there was no benefit in the Booth Agreement sufficient to trigger the unconstitutional conditions doctrine. The burden has shifted to Plaintiff to not assert that Defendants have failed to prove a point, but to instead put forth sufficient evidence to show that Defendants cannot succeed *as a matter of law*. In other words, Plaintiff must show how the "benefits" she cites are those that would be covered by the unconstitutional conditions doctrine. In her memorandum in response to Defendant's motion for summary judgment and in her memorandum in support of her own motion for summary judgment, Plaintiff has not cited a single case or legal argument that would support her theory that the "benefits" she identifies would be sufficient to trigger the unconstitutional conditions doctrine. Therefore, summary judgment for Defendants with respect to the Booth Agreement will be granted.

---

[4] In her memorandum supporting her own motion for summary judgment, Plaintiff characterizes the benefit as "the means by which to relocate from their beloved home which the government had contaminated and made unsafe for habitation" (citing to the Weber complaint) and as "provid[ing] them the means [money] to move from the property they themselves contaminated." There is no evidence before the Court that the Booth property was contaminated.
- 6 -
Case 3:04-cv-00081-NKM-JGW Document 80 Filed 04/18/07 Page 6 of 7 Pageid#: 797

With respect to the Burke Agreement, there is no government benefit contingent on those plaintiffs' silence.[5] Although the Burke Agreement imposed on Defendants obligations relating to groundwater contamination and potable drinking water, the terms of that agreement make clear that neither of those benefits are contingent on the Burke plaintiffs giving up any First Amendment rights. Plaintiff argues that "the benefit was the guarantee itself—that Defendants would take steps to prevent the [Burke] plaintiffs' water from being contaminated." Again, however, as the agreement terms make clear, that "benefit" was not contingent on the Burke plaintiffs giving up First Amendment rights. Therefore, the unconstitutional conditions doctrine is not invoked and, as with the Booth Agreement, summary judgment for Defendants is proper.

## IV. Conclusion

For the forgoing reasons, Defendants' motion for summary judgment will be GRANTED and Plaintiff's motion for summary judgment will be DENIED, both in an order to follow.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

ENTERED: _/s/ [signature]_
United States District Judge

Date: April 18, 2007

---

[5] Indeed, by the terms of the Burke Agreement, the Burke plaintiffs are only prohibited from opposing a permit and must remove information from websites and billboards that oppose the landfill. Nothing in the Burke Agreement prohibits those plaintiffs from otherwise speaking out about the landfill.

- 7 -